ZIP SORT, INC., d/b/a Federal Mailing Systems,
Petitioner-Appellant,†

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent-
Respondent.

Court of Appeals

*No. 00–2824. Submitted on briefs March 9, 2001.—Decided July
18, 2001.*

2001 WI App 185

(Also reported in 634 N.W.2d 99.)

† Petition to review denied 10-23-01.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Kay Nord Hunt* of *Lommen, Nelson, Cole & Stageberg, P.A.*, Minneapolis, Minnesota.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Stephen J. Nicks*, assistant attorney general.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1. DYKMAN, P.J. Zip Sort, Inc., appeals from an order affirming a Tax Appeals Commission (commission) decision that Zip Sort's property is not "manufacturing property" within the meaning of WIS. STAT. § 70.995 (1993–94).[1] Zip Sort first asserts that we should apply a de novo standard of review to the

---

[1] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted. WISCONSIN STAT. § 70.995 states in part:

> (1) APPLICABILITY. (a) In this section "manufacturing property" includes all lands, buildings, structures and other real property used in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit. Manufacturing property also includes warehouses, storage facilities and office structures when the predominant use of the warehouses, storage facilities or offices is in support of the manufacturing property, and all personal property owned or used by any person engaged in this state in any of the activities mentioned, and used in the activity, including raw materials, supplies, machinery, equipment, work in

commission's decision because it faced a question of first impression and because it has issued inconsistent decisions in the past. Zip Sort also argues that its property is manufacturing property as defined by § 70.995 because; (1) its business is more similar to manufacturing than not, and (2) the bar codes it "manufactures" are tangible personal property. The Department of Revenue (DOR) argues that the proper

process and finished inventory when located at the site of the activity. Establishments engaged in assembling component parts of manufactured products are considered manufacturing establishments if the new product is neither a structure nor other fixed improvement. Materials processed by a manufacturing establishment include products of agriculture, forestry, fishing, mining and quarrying. For the purposes of this section, establishments which engage in mining metalliferous minerals are considered manufacturing establishments.

. . . .

(d) Except for the activities under sub. (2), activities not classified as manufacturing in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget are not manufacturing for this section.

(2) FURTHER CLASSIFICATION. In addition to the criteria set forth in sub. (1), property shall be deemed prima facie manufacturing property and eligible for assessment under this section if it is included in one of the following major group classifications set forth in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget. For the purposes of this section, any other property described in this subsection shall also be deemed manufacturing property and eligible for assessment under this section:

. . . .

(j) 27—Printing, publishing and allied industries.

. . . .

(v) 39—Miscellaneous manufacturing industries.

standard of review is great weight deference and that we should affirm the commission's decision because it was reasonable.

¶ 2. We disagree with Zip Sort's assertion that the correct standard of review is de novo because we conclude that the commission is experienced in interpreting Wɪs. Sᴛᴀᴛ. § 70.995, and that any inconsistency in its past decisions was with regard to an issue not dispositive of this case. We need not determine whether the proper standard of review is due weight deference or great weight deference because the commission's interpretation of § 70.995(1)(a) is reasonable, and the alternative proposed by Zip Sort is not more reasonable. We therefore affirm.

## I. Background

¶ 3. Since approximately November 1995, Zip Sort has been doing business in Milwaukee under the trade name "Federal Mailing Systems." Zip Sort's primary business is to make mail machine-sortable where it would otherwise have to be sorted by hand. It does so by applying an eleven-digit bar code to each piece of mail. Each mail piece is processed by a machine called a "multi-line optical character reader," in which a camera scans the address. The optical reader compares each address to a United States Postal Service (Postal Service) national directory and determines whether a bar code can be created for the particular address. If so, a bar code is printed on the piece of mail with an ink jet. The optical reader also verifies the bar codes and then sorts the mail to either three or five digits. Zip Sort bands and tags the partially sorted mail, and prepares it for shipment to the Postal Service. The Postal Service sorts the mail by the remaining digits.

¶ 4. Zip Sort generates revenue from its bar coding and sorting process in two ways: it charges customers to process their mail and it receives what is termed a "value-added refund" from the Postal Service for each piece of mail that is properly prepared according to Postal Service standards.

¶ 5. In February 1996, Zip Sort applied for classification of its Milwaukee location as "manufacturing property" under WIS. STAT. § 70.995. WISCONSIN. STAT. ch. 70 contains the state's property tax statutes, and section 70.995 states, in part:

> (1) APPLICABILITY. (a) In this section "manufacturing property" includes all lands, buildings, structures and other real property used in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit. . . .
>
> . . . .
>
> (d) Except for the activities under sub. (2), activities not classified as manufacturing in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget are not manufacturing for this section.
>
> (2) FURTHER CLASSIFICATION. In addition to the criteria set forth in sub. (1), property shall be deemed prima facie manufacturing property and eligible for assessment under this section if it is included in one of the following major group classifications set forth in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget. For the purposes of this section, any other property described in this subsection shall also be deemed manufacturing property and eligible for assessment under this section:
>
> . . . .

(j) 27—Printing, publishing and allied industries.

. . . .

(v) 39—Miscellaneous manufacturing industries.

DOR denied Zip Sort's request, concluding that Zip Sort's property did not meet the definition of manufacturing property as defined in WIS. STAT. § 70.995. Zip Sort filed an objection to DOR's determination with the State Board of Assessors, which upheld the decision by DOR.

¶ 6. Zip Sort appealed to the commission, which agreed with the decisions of DOR and the board. The commission determined that WIS. STAT. § 70.995(1)(d) and (2) must be read together, and that an activity is manufacturing for the purposes of § 70.995 if it is classifiable as manufacturing in the Standard Industrial Classification Manual (SIC manual) or if it is specifically defined as manufacturing by § 70.995, even though not listed in the SIC manual. The commission acknowledged that under *Janesville Data Ctr., Inc. v. DOR*, 84 Wis. 2d 341, 267 N.W.2d 656 (1978), the law was unclear as to whether the bar codes would constitute tangible personal property. The commission concluded, however, that classification of Zip Sort's property need not rest on such a determination.

¶ 7. The parties agreed before the commission that Zip Sort's business did not fit perfectly into any one of the categories listed in the SIC manual or otherwise enumerated in WIS. STAT. § 70.995.[2] As a result, the commission looked to the Wisconsin Property Assessment Manual (assessment manual) in order to deter-

[2] In addition to the categories cross-referenced to the SIC manual, WIS. STAT. § 70.995(2)(x)-(z) lists additional classifications.

mine whether Zip Sort's business could be considered manufacturing within the general definition of WIS. STAT. § 70.995(1). The assessment manual is promulgated by DOR pursuant to WIS. STAT. § 73.03[3] and is the primary document for defining assessment standards and practices in Wisconsin. *State ex rel. Campbell v. Township of Delavan*, 210 Wis. 2d 239, 258, 565 N.W.2d 209 (Ct. App. 1997).

¶ 8. The assessment manual states: "S. 70.995, Stats., and [the] SIC Manual may not cover every type of business in existence. For those not mentioned in either place, the criteria and general definitions included in s. 70.995(1)(a) and (b), Stats., shall be considered . . . ." Thus, the assessment manual acknowledges that even where a business does not fit perfectly into a SIC manual category or other classification specifically enumerated in WIS. STAT. § 70.995(2), it may nevertheless qualify as manufacturing property under the general definitions set forth in § 70.995(1)(a) and (b).

¶ 9. The assessment manual also states that, in order to determine whether a business qualifies under the general definition of WIS. STAT. § 70.995(1)(a) and (b), the following three questions should be asked, in order of priority:

---

[3] WISCONSIN STAT. § 73.03 states, in part:

It shall be the duty of the department of revenue, and it shall have power and authority:

. . . .

(2a) To prepare, have published and distribute to each county having a county assessor system under s. 70.99 and to each town, city and village in the state for the use of assessors, assessment personnel and the public detailed assessment manuals . . . . The manual shall discuss and illustrate accepted assessment methods, techniques and practices with a view to more nearly uniform and more consistent assessments of property at the local level.

1. Is the activity more similar to those specifically classified manufacturing by law and the SIC Manual, or more similar to those specifically classified nonmanufacturing by law and the SIC Manual?

2. Is the activity more closely aligned with the general description of producing, assembling, fabricating, making or milling by machinery and equipment of a new article with a different form, use and name from existing materials, or is it more aligned with the general activities involved with services as generally described in the SIC Manual, wholesale trade, retail trade, agriculture, or construction?

3. Does the activity produce products more for wholesalers, interplant transfer, to order for industrial users or more for direct sale to domestic consumers?

¶ 10. Applying the three questions, the commission concluded that DOR properly denied manufacturing classification to Zip Sort. Zip Sort petitioned the circuit court for review of the commission's decision, and the circuit court affirmed the commission. Zip Sort appeals.

## II. Analysis

### A. *Standard of Review*

██

¶ 11. In an appeal following an administrative agency decision, we review the decision of the agency, not that of the circuit court. *Zignego Co., Inc. v. DOR*, 211 Wis. 2d 819, 824, 565 N.W.2d 590 (Ct. App. 1997).

Here, we review the decision of the commission. *See Hafner v. DOR*, 2000 WI App 216, ¶ 3, 239 Wis. 2d 218, 619 N.W.2d 300. When we review an administrative agency's interpretation of a statute, there are three possible levels of deference. *Barron Elec. Co-op. v. PSC*, 212 Wis. 2d 752, 760, 569 N.W.2d 726 (Ct. App. 1997); *see also Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659–60, 539 N.W.2d 98 (1995).

¶ 12. When we give "great weight" deference to the agency's interpretation, we will sustain a reasonable agency conclusion even if an alternative conclusion is more reasonable. *Zignego Co.*, 211 Wis. 2d at 823. We give "great weight" deference to the agency's interpretation when all of the following conditions are met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.*

¶ 13. When we give "due weight" deference to the agency's interpretation, we will not overturn a reasonable agency decision that comports with the purpose of the statute unless we determine that there is a more reasonable interpretation available. *Zignego Co.*, 211 Wis. 2d at 823–24. We give "due weight" deference when the agency has some experience in an area, but has not developed the expertise that necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court. *Id.* at 823.

¶ 14. When we review an agency decision de novo, we give no deference to the agency's interpretation. *Barron Elec.*, 212 Wis. 2d at 763. De novo review is appropriate if any of the following are true: (1) the issue before the agency is clearly one of first impression; (2) a legal question is presented and there is no evidence of any special agency expertise or experience; or (3) the agency's position on an issue has been so inconsistent that it provides no real guidance. *Coutts v. Retirement Bd.*, 209 Wis. 2d 655, 664, 562 N.W.2d 917 (1997).

██

¶ 15. Zip Sort argues that we should review the commission's decision de novo. DOR contends that the proper standard of review is great weight deference. We disagree with Zip Sort that de novo review is required. We also conclude that we need not determine whether the proper standard of review is great weight deference or due weight deference because the commission's interpretation and application of WIS. STAT. § 70.995 is reasonable, whereas Zip Sort has not provided a more reasonable interpretation of § 70.995. We will first explain why de novo review is not required, and we will then turn to the reasonableness of the commission's conclusions under § 70.995.

¶ 16. Zip Sort first argues that de novo review is necessary because the question the commission faced was one of first impression, as well as one where it had no special expertise. Zip Sort asserts that it uses technology not contemplated by the SIC manual, which was published in 1987, and that the commission therefore could not rely on the SIC manual. We disagree.

¶ 17. We have previously considered and rejected the argument that because the commission has not

already made an identical determination to the one before it, de novo review is required:

> [DOR] has been classifying manufacturing property since May 1, 1974, the effective date of the manufacturing machinery and equipment assessment and exemption law. The commission has reviewed numerous determinations by [DOR] under sec. 70.995, Stats. It is appropriate to give weight and deference to the commission's interpretation of a statute where it has experience and has developed expertise in construing a statute, although not on the precise question involved in a particular case.

*Video Wisconsin Ltd. v. DOR*, 175 Wis. 2d 195, 199–200, 498 N.W.2d 880 (Ct. App. 1993) (citations omitted); *see also Susie Q Fish Co., Inc. v. DOR*, 148 Wis. 2d 862, 868–69, 436 N.W.2d 914 (Ct. App. 1989). Referring to *Susie Q Fish*, we have also said:

> [T]he key in determining what, if any, deference courts are to pay to an administrative agency's interpretation of a statute is the agency's experience in administering the particular statutory scheme—and that experience must necessarily derive from consideration of a variety of factual situations and circumstances. Indeed, we have recognized in a series of cases that an agency's experience and expertise need not have been exercised on the precise—or even substantially similar—facts in order for its decisions to be entitled to judicial deference.

*Barron Elec.*, 212 Wis. 2d at 764; *see also Johnson v. LIRC*, 200 Wis. 2d 715, 721, 547 N.W.2d 783 (Ct. App. 1996) (giving due weight deference to a question of *"very nearly* first impression") (emphasis added).

¶ 18. Thus, even assuming the commission has not previously decided whether the application of bar codes to mail is manufacturing under Wis.

STAT. § 70.995, it is still entitled to some degree of deference. Assuredly, this is not the first time that the commission has been called upon to make § 70.995 determinations for business activities that, due to technological advances, were not specifically contemplated by the fourteen-year-old SIC manual. As we explained in *Video Wisconsin*, the commission has many years of experience interpreting and implementing the statutory scheme set forth in § 70.995, and we are in no better position than the commission to address any perceived gap between the classification standards and recent technology.

¶ 19. Zip Sort refers us to *S.C. Johnson & Son, Inc. v. DOR*, 202 Wis. 2d 714, 726, 552 N.W.2d 102 (Ct. App. 1996), a case in which we engaged in a de novo review of the commission's interpretation of WIS. STAT. § 70.995. However, *S.C. Johnson* is readily distinguishable. In *S.C. Johnson*, the question was whether a manufacturing business's recreational facility could be considered part of its manufacturing property. *Id.* at 718. The taxpayer argued that the facility qualified under the part of § 70.995(1)(a) stating that "[m]anufacturing property also includes warehouses, storage facilities and office structures when the predominant use of the warehouses, storage facilities or offices is in support of the manufacturing property." *See id.* at 722. In addition, the taxpayer also contended that its recreational facility qualified under § 70.995(2) and the SIC manual, which addresses the classification of recreational facilities. *Id.* at 724. We explained our reasons for reviewing the commission's conclusions de novo:

> [DOR] acknowledged before the trial court that the taxpayer's appeal to the . . . Board of Assessors was "the first appeal in the past 20 years to the [board] to contest a denial to classify an auxiliary establishment as manu-

facturing." The experience [DOR] has gained in classifying manufacturing property generally does not provide special expertise to resolve the legal issue of the relationship between auxiliary classifications under the SIC Manual and § 70.995(1) and (2), Stats.

*Id.* at 725–26. Thus, the situation in *S.C. Johnson* is unlike the situation here, where the commission's analysis was limited to the activities of the business itself. This is an area where the commission has a great deal of experience, as we emphasized in *Video Wisconsin*.

¶ 20. Zip Sort also asserts that we must review the commission's decision de novo because it has rendered inconsistent determinations. Zip Sort argues that the commission's decision in *Health Micro Data Systems v. DOR*, 87–S-418 Wis. Tax Rep. (CCH) ¶ 203–062 (May 29, 1989), is at odds with its decisions in *B.I. Moyle Ass'n, Inc. v. DOR*, 87–S-141, Wis. Tax Rep. (CCH) ¶ 203–208 (Dec. 12, 1990), and in *Manpower Int'l, Inc. v. DOR*, 93–S-255, Wis. Tax Rep. (CCH) ¶ 400–075 (Aug. 15, 1994). Zip Sort further asserts that the commission determination in *Health Micro* is inconsistent with its determination in this case.

¶ 21. We need not recite all the details of those commission decisions here. The key point is that each decision addressed whether computer programs were tangible personal property for purposes of the Wis. Stat. ch. 77 sales and use tax. *Manpower*, Wis. Tax. Rep. (CCH) ¶ 400–075; *B.I. Moyle*, Wis. Tax Rep. (CCH) ¶ 203–208; *Health Micro*, Wis. Tax Rep. (CCH) ¶ 203–062. Even assuming the decisions present some inconsistencies, they are not "so inconsistent as to provide no real guidance" on the issue before the commission in this case. In *Manpower, B.I. Moyle,* and *Health Micro*, the commission was not interpreting Wis.

STAT. § 70.995, and bar codes are not computer programs. The commission applied *Janesville Data*, a case we view as having questionable applicability for reasons we discuss further below. *See infra* ¶ 33. In short, we reject Zip Sort's assertion that the proper standard of review is de novo because of limited inconsistencies in previous commission decisions that are not on all fours with the case before us.

¶ 22. Having concluded that we should not apply de novo review, we turn to the reasonableness of the commission's interpretation of WIS. STAT. § 70.995. We do not determine whether the proper standard of review is due weight deference or great weight deference because we conclude that the commission's conclusions under § 70.995 at least met the due weight deference standard.

*B. Commission's Conclusions under WIS.*
*STAT. § 70.995*

¶ 23. Under WIS. STAT. § 70.995(1)(d) and (2), certain categories of business activity qualify as "prima facie manufacturing property." However, the parties agree that Zip Sort's business does not fit perfectly into any of those categories. Therefore, Zip Sort's business qualifies as manufacturing property only if it fits within the general definition set forth in § 70.995(1). Section 70.995(1)(a) states in part:

> (1) APPLICABILITY. (a) In this section "manufacturing property" includes all lands, buildings, structures and other real property used in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit.

Zip Sort complains that the commission did not undertake its own independent statutory analysis but instead

"deferred" to the three questions set forth in the assessment manual. Zip Sort argues that by focusing on the three questions, the commission failed to consider the plain language of WIS. STAT. § 70.995(1)(a) and (b).

¶ 24. As we noted earlier, the assessment manual was promulgated by DOR and is the primary document for defining assessment standards and practices in Wisconsin. *See Campbell,* 210 Wis. 2d at 258. The assessment manual explicitly recognizes that not all business activities will be covered by the SIC manual, and it sets forth the three questions precisely for the purpose of interpreting "the criteria and general definitions included in s. 70.995(1)(a) and (b)." The commission's decision to apply the three questions in the assessment manual in interpreting § 70.995 was therefore reasonable. The questions themselves refer to language in the statute, and Zip Sort's assertion that the general definition of "manufacturing property" in the statute must be analyzed independently of the questions is no more reasonable than the interpretation of the commission.

¶ 25. We turn next to the commission's conclusion under the three questions, again applying the reasonableness test. The first assessment manual question asks: is the activity more similar to those specifically classified as manufacturing by law and the SIC manual, or more similar to those specifically classified as nonmanufacturing by law and the SIC manual? Answering this question, the commission concluded that Zip Sort's business was more like those classified as nonmanufacturing than manufacturing. The commission noted that the major nonmanufacturing category of "Business Services" includes "establishments primarily engaged in rendering services, not elsewhere classified, to business establishments on a contract or fee basis, such as . . .

mailing [or] data processing . . . ." The commission determined that Zip Sort's business was most similar to this category or to another general category, "Business Services, Not Elsewhere Classified," which includes "Presorting mail service."

¶ 26. Zip Sort asserts that its business is more analogous to several SIC manual manufacturing classifications, most notably "Commercial Printing, Not Elsewhere Classified," which contains the subcategory of "Labels, printed." Zip Sort points out that it is often the case that "what once may have been printed on labels is now printed directly on the mail piece itself."

¶ 27. The second question asks: is the activity more closely aligned with the general description of producing, assembling, fabricating, making or milling by machinery and equipment of a new article with a different form, use and name from existing materials, or is it more aligned with the general activities involved with services as generally described in the SIC manual, wholesale trade, retail trade, agriculture, or construction? Zip Sort asserts that its production of the bar code creates a "new article," that the bar code is something it produces that did not previously exist. The commission disagreed, reasoning that even if it assumed that the bar code was a new article with a different form and name from the addressed envelope, it did not follow "that its use is different than that of the original address, which is to facilitate the sorting and ultimate delivery of a mail piece." Looking at Zip Sort's business activity as a whole, which includes sorting after the application of the bar code, the commission determined that Zip Sort was more closely aligned with "services . . . such as data processing and mailing than with the general description of producing a new product from

312

machinery and equipment." Therefore, the commission concluded, the second question also weighed against Zip Sort.

██

¶ 28. With regard to the first two questions, the commission's determination was reasonable, and Zip Sort's application of the questions is no more reasonable. It is arguable whether the bar code is an "article," let alone a new article with a use different from the original address. Given the categories in the SIC manual, it is no more reasonable to conclude that Zip Sort is engaged in printing labels than to conclude that it is engaged in presorting mail.

¶ 29. The third and final question asks: does the activity produce products more for wholesalers, inter-plant transfer, to order for industrial users or more for direct sale to domestic consumers? With regard to this question, the commission noted that "[t]he record doesn't provide a clear answer to this question." The commission then concluded that, because the first two questions weighed against Zip Sort and because the third question carried the least weight of the three, it did not need to answer the third question decisively to conclude that Zip Sort's property did not qualify as "manufacturing property" under WIS. STAT. § 70.995. Zip Sort makes its argument in one sentence: "Zip Sort's bar codes are produced for industrial users—namely, Zip Sort's private customers and the [Postal Service]—and not for direct sale to the domestic consumer market." We do not agree with Zip Sort because it assumes a conclusion that is part of the real issue in this case: whether Zip Sort is in fact making a product. Even if the bar codes were considered a product, Zip Sort's customers, other than the Postal Service, never actually receive the bar codes. They receive the

313

service of having their outgoing mail coded and pre-sorted in order to save money on postage. At any rate, the third question does not weigh strongly in favor of Zip Sort, if at all. We do not think the reasonableness of the commission's ultimate determination is under-mined by its failure to make a determination with regard to the third question, particularly since the third question is to be given the least weight of the three.

¶ 30. Finally, Zip Sort argues that its Milwaukee property qualifies under WIS. STAT. § 70.995(1)(a) be-cause a bar code should be considered tangible personal property. The commission concluded that it need not rest its decision on a determination of whether bar codes were tangible personal property. We agree with the commission.

¶ 31. First, we note that the classification of "manufacturing property" under WIS. STAT. § 70.995(1) does not depend only on whether tangible personal property is involved. The plain language of § 70.995 requires a broader analysis. Second, we have already explained that the assessment manual is the primary tool for classifying property under § 70.995(1), and it does not focus on defining tangible personal property.

¶ 32. Focusing on the definition of tangible per-sonal property, as Zip Sort suggests, would not provide a more reasonable approach because there is no con-trolling authority on the question whether bar codes are tangible personal property.[4] The closest is probably *Janesville Data*. There, the taxpayer transferred data

---

[4] Zip Sort relies heavily on a Minnesota case in which that state's supreme court concluded that Zip Sort's bar codes were tangible personal property. *See Zip Sort, Inc. v. Comm'r*, 567 N.W.2d 34, 40 (Minn. 1997). Of course, we are not bound by another state's judicial determinations. *Koshiol v. American Family Mut. Ins. Co.*, 171 Wis. 2d 192, 196, 491 N.W.2d 776 (Ct.

provided by its customers onto key punch cards and magnetic tapes. *Janesville Data*, 84 Wis. 2d at 342. For almost all its customers, the taxpayer purchased key punch cards ahead of time in bulk and then passed that cost along to the customers. *Id.* at 342–43. One of the issues was whether the taxpayer's gross receipts were taxable under Wis. Stat. § 77.52 as involving the "sale, lease or rental at retail of tangible personal property." *Id.* at 343. Relying on a Texas case, the supreme court determined that "a keypunch operation was not taxable because the object of the transaction was the sale of intangible coded information, not the sale of tangible personal property." *Id.* at 346 (citing *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166 (Tex. 1977)).

¶ 33. We question the applicability of *Janesville Data* here. It involved a different type of business and a different statute. *See Janesville Data*, 84 Wis. 2d at 342–43. Moreover, it is a twenty-three-year-old case set in an age of computer technology entirely different from the one in which we now live. If anything, it would appear to support a conclusion that bar codes are *not* tangible personal property. That conclusion would in turn support the commission's decision, albeit on other grounds. The existence of *Janesville Data* certainly does not suggest that Zip Sort's interpretation of Wis. Stat. § 70.995(1)(a) is more reasonable than that of the commission.

¶ 34. Given the questionable applicability of *Janesville Data*, and given our determination that the commission properly relied on the three questions in the assessment manual, we conclude that the commis-

App. 1992). We decline to overturn the commission's decision based on another state's reading of its own sales tax statutes.

sion need not have decided whether the bar codes were tangible personal property. The commission's ultimate conclusion is reasonable. Zip Sort's assertion that its bar codes are tangible personal property, and that because they are tangible personal property, its Milwaukee business is manufacturing property, is no more reasonable. We affirm the circuit court's decision upholding the commission's determination.

*By the Court.*—Order affirmed.