TETRA TECH EC, INC., and Lower Fox River Remediation LLC, Petitioners-Appellants,†

v.

Wisconsin DEPARTMENT OF REVENUE, Respondent-Respondent.

Court of Appeals

*No. 2015AP2019. Submitted on briefs May 3, 2016. —Decided December 28, 2016.*

2017 WI App 4

(Also reported in 890 N.W.2d 598.)

† Petition for Review filed.

287

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Frederic J. Brouner, Donald Leo Bach* and *Barret V. Van Sicklen* of *DeWitt Ross & Stevens, S.C.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Brian P. Keenan*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. SEIDL, J. In this sales and use tax case, the Tax Appeals Commission concluded: (1) Stuyvesant Dredging, Inc.'s (SDI) activity of separating dredged material from the Fox River into its constituent parts constituted "processing" of tangible personal property under WIS. STAT. § 77.52(2)(a)11. (2007–08),[1] and thus is a service subject to Wisconsin's retail sales and use tax; and (2) WIS. STAT. § 77.59(3) did not preclude the Department of Revenue from raising an alternative legal basis for taxation before the commission that was not first asserted in the Department's written notices of determination to Lower Fox River Remediation, LLC (Fox River Remediation) and Tetra Tech EC, Inc. (Tetra Tech).

¶ 2. We determine the commission's legal conclusions are entitled to great weight deference and, under that deferential standard, we conclude they are rea-

---

[1] The relevant tax years for this case are 2007–09. Therefore, the 2005–06 and 2007–08 versions of the Wisconsin Statutes apply. However, because there are no substantive differences between the 2005–06 and 2007–08 versions of the relevant portions of the Wisconsin Statutes, all subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

sonable. We also conclude the Department complied with the requirements of Wis. Stat. § 77.59(3). Therefore, we affirm the circuit court's order affirming the commission's order.

## BACKGROUND

¶ 3. The material facts are undisputed. In 2007, the Environmental Protection Agency ordered several Wisconsin paper companies to remediate the environmental impact caused by polychlorinated biphenyls (PCBs)[2] the companies had previously released into the Fox River. In response, the paper companies created Fox River Remediation. Fox River Remediation hired Tetra Tech as its general contractor to perform the remediation. Tetra Tech, in turn, hired SDI as one of its subcontractors. SDI was hired to separate the material dredged from the Fox River into its constituent components so that those components could be delivered to, and disposed of, by Tetra Tech. More specifically, SDI removes the sand from the dredged material and then extracts the water from the finer-grained sediments left over from the desanding through the use of membrane filter presses. The remaining material, consisting of the finer-grained sediments and PCBs, is then disposed of by Tetra Tech.

¶ 4. In 2010, the Department conducted a field audit of Fox River Remediation and Tetra Tech. After completing its field audit, the Department issued written notices to both entities. The Department concluded

---

[2] According to the Environmental Protection Agency, PCBs are " 'probable' human carcinogens and a risk factor for other serious, long-term health effects." Vanessa de la Torre, *Hartford School Gets New Tests to Find Contaminants*, Hartford Courant (Jan. 20, 2015, 9:30 AM), http://www.courant. com/community/hartford/hc-hartford-school-board-pcbs-0121–20150120–story.html.

that Tetra Tech owed sales tax on the portion of its sale of remediation services to Fox River Remediation that represented SDI's activities. The Department also concluded that Fox River Remediation owed use tax on the portion of its purchase of remediation services from Tetra Tech that represented SDI's activities. In its written notices to both entities, the Department concluded that SDI's activities were taxable under WIS. STAT. § 77.52(2)(a)10.[3] The Department did not cite § 77.52(2)(a)11.[4] in its written notices as a legal basis for imposing tax liability.

¶ 5. In 2011, both entities filed petitions for redetermination with the Department. With respect to the taxability of SDI's activities, the Department denied in part the petitions for redetermination in 2012, again concluding that SDI's activities were taxable under WIS. STAT. § 77.52(2)(a)10.

¶ 6. Fox River Remediation and Tetra Tech petitioned the commission to review the Department's determinations. Fox River Remediation, Tetra Tech, and the Department each moved for summary judgment. The Department argued that SDI's activities were taxable under WIS. STAT. § 77.52(2)(a)10. or, alternatively, as "processing" of tangible personal property under § 77.52(2)(a)11. The commission agreed with the alternative argument, concluding that SDI's activities

[3] Subject to certain exceptions, WIS. STAT. § 77.52(2)(a)10. imposes sales and use tax on "the repair, service, alteration, fitting, cleaning, painting, coating, towing, inspection, and maintenance of all items of tangible personal property."

[4] Subject to certain exceptions, WIS. STAT. § 77.52(2)(a)11. imposes sales and use tax on "[t]he producing, fabricating, processing, printing or imprinting of tangible personal property for a consideration for consumers who furnish directly or indirectly the materials used in the producing, fabricating, processing, printing or imprinting."

constituted "processing" of tangible personal property under § 77.52(2)(a)11. The commission also rejected Fox River Remediation and Tetra Tech's argument that Wis. Stat. § 77.59(3)[5] precluded the Department from raising § 77.52(2)(a)11. as an alternative legal basis for taxation before the commission even though it was not first asserted in the Department's written notices of determination.

¶ 7. Fox River Remediation and Tetra Tech petitioned the circuit court to review the commission's decision. The circuit court affirmed the commission's order. Fox River Remediation and Tetra Tech now appeal.

## DISCUSSION

¶ 8. "In an appeal following a decision of the Tax Appeals Commission, we review the [c]ommission's decision, not the circuit court's." *Xerox Corp. v. DOR*, 2009 WI App 113, ¶ 8, 321 Wis. 2d 181, 772 N.W.2d 677 (citation omitted). When reviewing the commission's interpretation or application of a statute, we apply one of three levels of deference: great weight, due weight, or no deference. *DOR v. A. Gagliano Co.*, 2005 WI App 170, ¶ 22, 284 Wis. 2d 741, 702 N.W.2d 834 (citing *Zip Sort, Inc. v. DOR*, 2001 WI App 185, ¶¶ 11–14, 247 Wis. 2d 295, 634 N.W.2d 99).

---

[5] Wisconsin Stat. § 77.59(3) states, in relevant part:

No determination of the tax liability of a person may be made unless written notice of the determination is given to the taxpayer . . . . The notice required under this paragraph shall specify whether the determination is an office audit determination or a field audit determination, and it shall be in writing. If the department is unable to obtain service by mail, publication of it as a class 3 notice, under ch. 985, shall be service of notice in any case where notice is required under this subchapter.

¶ 9. The highest level of deference, great weight deference, is appropriate when:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute.

*Xerox Corp.*, 321 Wis. 2d 181, ¶ 47 (citation omitted). "Great weight deference is also applied to an agency's interpretation 'if it is intertwined with value and policy determinations inherent in the agency's statutory decisionmaking function.' " *Id.* (quoting *Barron Elec. Co-op. v. PSC*, 212 Wis. 2d 752, 761 & n.5, 569 N.W.2d 726 (Ct. App. 1997)). When an agency's legal conclusion is accorded great weight deference, we will uphold the agency's conclusion "as long as it is reasonable and not contrary to the clear meaning of the applicable statutes, even if another conclusion is more reasonable." *Id.* (citation omitted).

¶ 10. The intermediate level of deference, due weight deference, "is appropriate when 'an agency has some experience in the area, but has not developed any particular expertise in interpreting and applying the statute at hand that would put the agency in a better position to interpret the statute than a reviewing court.' " *Id.*, ¶ 48 (quoting *Stoughton Trailers, Inc. v. LIRC*, 2007 WI 105, ¶ 28, 303 Wis. 2d 514, 735 N.W.2d 477). When an agency's legal conclusion is accorded due weight deference, we will uphold the agency's conclusion "if it is reasonable and comports with the

purpose of the statute, and no other interpretation is more reasonable." *Id.* (citation omitted).

¶ 11. The lowest level of deference, no deference, is appropriate when: "(1) the issue before the agency is clearly one of first impression; (2) a legal question is presented and there is no evidence of any special agency expertise or experience; or (3) the agency's position on an issue has been so inconsistent that it provides no real guidance." *Zip Sort, Inc.*, 247 Wis. 2d 295, ¶ 14 (citation omitted).

## I. The Commission's Legal Conclusions are Entitled to Great Weight Deference.

¶ 12. Utilizing the four-prong test described in *Xerox Corp.*, we conclude the commission's legal conclusions in this case are entitled to great weight deference.[6] The commission "is charged with interpreting and administering the tax code and adjudicating

---

[6] Fox River Remediation and Tetra Tech argue the commission's legal conclusions are entitled to no deference for two principal reasons. First, they argue the commission exceeded its authority by converting the narrow and selective sales and use tax on specific, enumerated retail services into a general sales and use tax on all retail services. However, the commission's *reasonable* interpretation of "processing" in Wis. Stat. § 77.52(2)(a)11. does not convert Wisconsin's sales and use tax on specific, enumerated retail services into a general sales and use tax on all retail services. *See infra* ¶¶ 17–20. Second, they argue the commission did not utilize its expertise to interpret "processing" in Wis. Stat. § 77.52(2)(a)11. because it referred to a dictionary definition. This argument was first raised in their reply brief. Therefore, we decline to address it. *See Bilda v. County of Milwaukee*, 2006 WI App 57, ¶ 20 n.7, 292 Wis. 2d

taxpayer claims." *Milwaukee Symphony Orchestra, Inc. v. DOR*, 2010 WI 33, ¶ 38, 324 Wis. 2d 68, 781 N.W.2d 674 (citing WIS. STAT. § 73.01(4) (1995–96)). Thus, the first prong for great weight deference is satisfied because the statutory provisions at issue are contained within WIS. STAT. ch. 77, which is part of Wisconsin's tax code that the commission is charged with administering.

■■■■

¶ 13. An agency's interpretation and application of a statute satisfy the second prong for great weight deference if "the agency's practice and methods of evaluating' issues of a similar nature" has been "longstanding." *Wisconsin Bell, Inc. v. PSC*, 2004 WI App 8, ¶ 19, 269 Wis. 2d 409, 675 N.W.2d 242, *aff'd by an equally divided court,* 2005 WI 23, 279 Wis. 2d 1, 693 N.W.2d 301; *see also Citizens' Util. Bd. v. PSC*, 211 Wis. 2d 537, 551–52, 565 N.W.2d 554 (Ct. App. 1997) ("Although the PSC's determination of 'adequacy' . . . is unique to this case, the agency's practice and methods . . . are long-standing . . . ."). The commission's practice and method of interpreting "processing" in WIS. STAT. § 77.52(2)(a)11. is long-standing; the commission has interpreted that term broadly for almost two decades. *See, e.g., Hammersley Stone Co. v. DOR*, Wis. Tax Rep. (CCH) ¶ 400–383 at 31,399 (WTAC 1998) (noting that the term "processing" in WIS. STAT § 77.52(2)(a)11. (1991–92) is "quite comprehensive" and concluding that it applies to the crushing of stone). Likewise, the commission's practice and method of interpreting WIS. STAT. § 77.59 is long-standing; for more than a decade, the commission has interpreted § 77.59 as not precluding

212, 713 N.W.2d 661 ("It is a well-established rule that we do not consider arguments raised for the first time in a reply brief." (citation omitted)).

the Department from raising an alternative legal basis for taxation before the commission that was not first asserted in the Department's written notices of determination. *See, e.g., Midwest Track Assocs. v. DOR*, Wis. Tax Rep. (CCH) ¶ 400–825 at 33,291 (WTAC 2005) ("[N]othing in the procedures cited by Midwest Track prohibits the Department from advancing a new theory to the [c]ommission in support of its assessment regarding a specified activity.").

¶ 14. An agency's interpretation and application of a statute satisfies the third prong for great weight deference "if the agency has developed expertise interpreting and applying *the statute* at issue." *Xerox Corp.*, 321 Wis. 2d 181, ¶ 51. We have no difficulty in concluding that the commission has sufficient experience in interpreting and applying § 77.52(2)(a)11. and § 77.59 to satisfy this prong. *See, e.g., Midwest Track Assocs., supra* at 33,291 (interpreting and applying § 77.59); *Hammersley, supra* at 31,399 (interpreting and applying § 77.52(2)(a)11.).

¶ 15. Finally, we conclude the fourth prong is satisfied because the commission's interpretation of Wis. Stat. §§ 77.52(2)(a)11. and 77.59 "will encourage uniformity and consistency in the application" of those statutory provisions, especially in light of the commission's expertise and long-standing interpretation of those provisions. *Xerox Corp.*, 321 Wis. 2d 181, ¶ 50.

## II. The Commission's Legal Conclusions are Reasonable.

¶ 16. "Having concluded that the [c]ommission's decision is entitled to great weight deference, our review is limited to the reasonableness of the [c]om-

299

mission's determination[s]." *Id.*, ¶ 56. If the commission's interpretation and application of Wis. Stat. §§ 77.52(2)(a)11. and 77.59(3) are reasonable, we will sustain those interpretations, "even if a more reasonable interpretation exists." *Id.* (citation omitted).

*A. SDI's Activities Reasonably Constitute "Processing" of Tangible Personal Property Under Wis. Stat. § 77.52(2)(a)11.*

¶ 17. The commission concluded that SDI's activities constituted "processing" of tangible personal property under Wis. Stat. § 77.52(2)(a)11., and were therefore a service subject to Wisconsin's retail sales and use tax. Because "processing" is not defined in the Wisconsin Statutes, the commission utilized a dictionary to interpret "processing" to mean: "to put through the steps of a prescribed procedure; or, to prepare, treat, or convert by subjecting to a special process." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1808 (unabr. 1993) (defining "processing" as "to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result" or "put through a special process"). It was reasonable for the commission to utilize a recognized dictionary definition in such a situation. *See Xerox Corp.*, 321 Wis. 2d 181, ¶ 61 (noting that the commission's use of a dictionary definition to construe an undefined statutory term "is a well-established practice in statutory interpretation").

¶ 18. Fox River Remediation and Tetra Tech argue the commission's conclusion that SDI's activities constituted "processing" of tangible personal property

under Wis. Stat. § 77.52(2)(a)11. is unreasonable.[7] They first argue the commission relied on an overly broad dictionary definition of "processing." They assert the broad dictionary definition conflicts with the manifest intent of the legislature by transforming the narrow and selective sales and use tax on specific, enumerated retail services into a general sales and use tax on all retail services. We find Fox River Remediation and Tetra Tech's argument unpersuasive.

¶ 19. First, and perhaps to state the obvious, "processing" has to mean something. While Fox River Remediation and Tetra Tech argue it was the commission's burden to derive a reasonable definition of the term (which, they contend, it has failed to do), we do find it compelling that Fox River Remediation and Tetra Tech have failed to offer any alternative, proposed interpretation of the term used within Wis. Stat. § 77.52(2)(a)11. Absent any competing, proposed meaning, we find it difficult to conclude the commission's use of an ordinary and accepted meaning of the term given the overall context of the statute is unreasonable.

¶ 20. Second, although the commission has interpreted the term "processing" in Wis. Stat. § 77.52(2)(a)11. in a broad fashion for nearly two decades, *see, e.g., Hammersley, supra* at 31,399, its application is limited to tangible personal property—i.e., it is inapplicable to retail services not involving tangible personal property, *see* Wis. Stat. § 77.52(2)(a)11.

_____

[7] Although not determinative of whether the commission's interpretation of "processing" in Wis. Stat. § 77.52(2)(a)11. was reasonable, we note that Tetra Tech's vice president of project engineering and senior engineer on the Fox River project testified in his deposition that he considered SDI's activity of separating dredged material from the Fox River into its constituent parts to be "processing."

Furthermore, the commission has continued to recognize that not all retail services are subject to Wisconsin's sales and use tax; only retail services which fall within one of the specific enumerated services in § 77.52(2)(a) are subject to sales and use tax. *See Brennan Marie, Inc. v. DOR*, Wis. Tax Rep. (CCH) ¶ 401–474 at 38,669 (WTAC 2011) (concluding that "barge fleeting services" do not fall within the ambit of Wisconsin's sales and use tax on retail services); *Manpower Inc. v. DOR*, Wis. Tax Rep. (CCH) ¶ 401–223 at 36,422 (WTAC 2009) (concluding that "temporary help services" are not subject to Wisconsin's sales and use tax on retail services). We reject Fox River Remediation and Tetra Tech's argument that the commission's interpretation of "processing" in § 77.52(2)(a)11., which is only applicable to tangible personal property, has somehow transformed Wisconsin's narrow and selective sales and use tax on specific, enumerated retail services into a general sales and use tax on all retail services, including those not involving tangible personal property.

¶ 21. Fox River Remediation and Tetra Tech's second argument is to note the commission found that SDI separated the dredged material into its constituent parts. Since Wis. Stat. § 77.52(2)(a) does not list "separation" as a taxable service, they argue the commission's conclusion is unreasonable because there is "ambiguity and doubt that SDI's activity is taxable." We disagree. Just because § 77.52(2)(a) does not specifically list "separation" as a taxable service, it does not follow that ambiguity and doubt exist. If ambiguity and doubt existed any time a taxable service was described utilizing words not explicitly found in § 77.52(2)(a), it would permit a taxpayer to avoid Wisconsin's sales and use tax by, for example, characterizing its "processing" of stone as the "crushing" of

stone. *Cf. Hammersley, supra* at 31,399 ("crushing" of stone constitutes "processing" of tangible personal property under § 77.52(2)(a)11.). That would be tantamount to "tax avoidance by dictionary[,] and clearly the law does not sanction such a result." *Cellar Door N. Cent., Inc. v. DOR*, Wis. Tax Rep. (CCH) ¶ 401–686 at 40,648 (WTAC 2013). We are comfortable concluding it was reasonable for the commission to determine SDI was engaged in physical separation processing of the components of the dredged material for purposes of § 77.52(2)(a)11.

¶ 22. Next, Fox River Remediation and Tetra Tech argue the commission's conclusion that SDI's activities constituted "processing" of tangible personal property under WIS. STAT. § 77.52(2)(a)11. is unreasonable because it is inconsistent with one of the department's administrative rules, WIS. ADMIN. CODE § TAX 11.38(2) (Sept. 2006),[8] noting that this subsection does not mention "separation." This argument is without merit. Subsection TAX 11.38(2) sets forth a non-exhaustive, illustrative list of services that constitute either "fabricating" or "processing" of tangible personal property under § 77.52(2)(a)11.; this is clear from the subsection's title, "*EXAMPLES* OF FABRICATING AND PROCESSING SERVICES." (Emphasis added.) Therefore, the commission's conclusion that SDI's activities constituted "processing" of tangible personal property under § 77.52(2)(a)11. is consistent with § TAX 11.38(2).

¶ 23. Finally, Fox River Remediation and Tetra Tech argue the commission's conclusion is unreasonable because its interpretation of "processing" in WIS.

---

[8] All references to WIS. ADMIN. CODE § TAX 11.38 are to the September 2006 version, which was in effect during the relevant tax years in this case.

STAT. § 77.52(2)(a)11. renders the remaining language in §§ 77.52(2)(a)10. and 77.52(2)(a)11. superfluous. We disagree. It is true that "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). However, "[t]he use of different words joined by the disjunctive connector 'or' normally broadens the coverage of the statute to reach distinct, although potentially overlapping sets." *Pawlowski v. American Family Mut. Ins. Co.*, 2009 WI 105, ¶ 22, 322 Wis. 2d 21, 777 N.W.2d 67.

¶ 24. The relevant words in WIS. STAT. § 77.52(2)(a)11.—i.e., producing, fabricating, processing, printing, imprinting—each have independent meaning[9] and are joined by the disjunctive connector "or." Therefore, the commission's interpretation of "processing" does not render the remaining language in § 77.52(2)(a)11. superfluous. *See Pawlowski*, 322

---

[9] For example, resorting again to dictionary definitions, "processing" is defined as "to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result" or "put through a special process." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1808 (unabr. 1993). "Producing" is defined as "to give being, form, or shape to." *Id.* at 1810. "Fabricating" is defined as "to form into a whole by uniting parts." *Id.* at 811. "Printing" is defined as "to produce printed matter." *Id.* at 1803. "Imprinting" is defined as "to mark by pressure." *Id.* at 1137. Each word has independent meaning, even though the meaning of those words may overlap in their application to a particular "activity." *Cf. Hammersley Stone Co. v. DOR*, Wis. Tax Rep. (CCH) ¶ 400–383 at 31,398–31,400 (WTAC 1998) (crushing of stone constitutes both "processing" of tangible personal property under WIS. STAT. § 77.52(2)(a)11. and "alteration" of tangible personal property under § 77.52(2)(a)10.).

Wis. 2d 21, ¶ 22. Likewise, the relevant words in § 77.52(2)(a)10.—i.e., repair, service, alteration, fitting, cleaning, painting, coating, towing, inspection, maintenance—each have independent meaning.[10] Although § 77.52(2)(a)10. and § 77.52(2)(a)11. are not explicitly joined by the disjunctive connector "or," the structure of § 77.52(2)(a) operates to make those paragraphs disjunctive alternatives. *See* § 77.52(2)(a) ("The tax imposed herein applies to the following types of services . . . ."). The terms in §§ 77.52(2)(a)10. and 77.52(2)(a)11. may overlap in their application,[11] but because each relevant term in §§ 77.52(2)(a)10. and 77.52(2)(a)11. has independent meaning, and the structure of § 77.52(2)(a) operates to make those paragraphs disjunctive alternatives, the commission's interpretation of "processing" does not render the remaining language in § 77.52(2)(a)10. superfluous. *See Pawlowski*, 322 Wis. 2d 21, ¶ 22.

*B. WISCONSIN STAT. § 77.59(3) Did Not Preclude the Department from Raising WIS. STAT. § 77.52(2)(a)11. as an Alternative Legal Basis for Taxation Before the Commission.*

■

¶ 25. The commission concluded WIS. STAT. § 77.59(3) did not preclude the Department from rais-

---

[10] For example, "repair" is defined as "to restore by replacing a part or putting together what is torn or broken." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (unabr. 1993). In contrast, "inspection" is defined as "strict or close examination." *Id.* at 1170.

[11] *See Hammersley, supra* at 31,398–31,400 (crushing of stone constitutes both "processing" of tangible personal property under WIS. STAT. § 77.52(2)(a)11. and "alteration" of tangible personal property under WIS. STAT. § 77.52(2)(a)10.).

ing Wis. Stat. § 77.52(2)(a)11. before the commission as an alternative legal basis for taxation simply because it was not first asserted in the Department's written notices of determination to Fox River Remediation and Tetra Tech. Fox River Remediation and Tetra Tech argue the commission's conclusion is unreasonable because, by failing to include § 77.52(2)(a)11. in its notices of determination, the Department violated § 77.59(3)'s requirement that the "determination of the tax liability of a person" "shall be in writing." They also contend allowing such a new assertion violates due process. We disagree in both respects.[12]

¶ 26. Wisconsin Stat. § 77.59(3) only requires the notice of determination to "be in writing" and to "specify whether the determination is an office audit determination or a field audit determination." Fox River Remediation and Tetra Tech are unable to point to any specific language in § 77.59(3) requiring the Department to provide every possible statutory or legal basis for taxation in its notice of determination. See Midwest Track Assocs., supra at 33,291 ("[T]he Department complied with [the statutory] procedures; it simply provided an alternative ground for its assessment after those procedures had been followed."). The Department's general practice of including the legal theory on which the tax liability is based is just that, a practice, not a statutory requirement. Additionally, the

[12] Fox River Remediation and Tetra Tech argue that the Department's "after-the-fact justification raises significant due process and fairness issues" and assert that "[t]he Department's practice in this case has been arbitrary and unfair." (Footnotes omitted.) However, their due process argument is conclusory and inadequately developed. Therefore, we decline to address it. See Associates Fin. Servs. Co. of Wis. v. Brown, 2002 WI App 300, ¶ 4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (declining to address conclusory argument).

commission has noted that "a taxpayer is permitted to raise new issues before the [c]ommission even after filing petitions with the Department and [c]ommission." *Id.* at 33,292. It would be incongruous to permit a taxpayer to raise new issues before the commission, but forbid the Department to do the same. *See id.* at 33,291 (noting that if the Department was forbidden from raising new issues before the commission, "then taxpayers would be equally prohibited from raising new arguments before the [c]ommission").

## CONCLUSION

¶ 27. We conclude that the commission's legal conclusions are entitled to great weight deference. Furthermore, we conclude the commission's conclusions—that SDI's activities constituted "processing" of tangible personal property under Wis. Stat. § 77.52(2)(a)11., and that Wis. Stat. § 77.59(3) did not preclude the Department from raising § 77.52(2)(a)11. as an alternative legal basis for taxation before the commission—are reasonable. Accordingly, we affirm the circuit court's order affirming the commission's order.

*By the Court.*—Order affirmed.