ANN WALSH BRADLEY, J. (concurring).
¶109 I concur in the mandate of the court because I agree that the term "processing" as used in *583 Wis. Stat. § 77.52(2)(a)11. encompasses the separation of river sediment into its component parts. See majority/lead op., ¶ 3.[1] Such a result is compelled whether we give the agency's interpretation great weight, due weight, or no weight at all. *584 ¶110 Further, I agree with the concurrences of Justices Ziegler and Gableman that, consistent with our doctrine of constitutional avoidance, the court need not reach the issue of whether our deference *64 framework violates the Wisconsin Constitution.
¶111 I write separately, however, for two reasons. First, the majority/lead opinion ignores controlling precedent to reach a result that upends decades of administrative law jurisprudence. Similarly, the concurrences of Justices Ziegler and Gableman, while not reaching the constitutional issue, would toss away a framework that has served courts well for decades. Second, the court's misguided wholesale changes create possible unintended consequences and a great deal of uncertainty.
¶112 The court should not so cavalierly discard our past practice. Additionally, its apparent lack of concern for what will become of the jurisprudence that has arisen through deference gives rise to more questions than it answers. Are cases in which courts afforded deference to an agency interpretation still good law? Or do some of these issues need to be relitigated under the new standard of review the court announces today? The majority/lead opinion's assurances are of little comfort. See Justice Ziegler's concurrence, ¶ 139 n.3.
¶113 Because I would not jettison a past practice that has served us well, I respectfully concur.
I
¶114 At the outset, I observe that the impetus for dismantling years of administrative law jurisprudence did not come from any party, but from this court. The issue of whether our agency deference doctrine *585 violates the Wisconsin Constitution was not raised by any party to this case before the circuit court, court of appeals, or in the petition for review here. It was this court, sua sponte, that asked that the issue be addressed in the first instance.
¶115 Having raised the issue, the majority/lead opinion fails to follow established precedent when addressing it. Had the majority/lead opinion adhered to our precedent, it would not have arrived at a result that creates such uncertainty. To the contrary, it would have reached the conclusion that our deference doctrine comports with the Wisconsin Constitution. By concluding that our deference doctrine removes the interpretive role of the judiciary, the majority/lead opinion commits legal error.
¶116 Indeed, this court previously examined a very similar question. In Borgnis v. Falk Co., 147 Wis. 327, 358, 133 N.W. 209 (1911), the court addressed an argument that the workers' compensation law "is unconstitutional because it vests judicial power in a body which is not a court and is not composed of men elected by the people, in violation of those clauses of the state Constitution which vest the judicial power in certain courts and provide for the election of judges by the people ...."
¶117 Rejecting the argument, the Borgnis court stated that the commission is "an administrative body or arm of the government which in the course of its administration of a law is empowered to ascertain some questions of fact and apply the existing law thereto, and in so doing acts quasi-judicially, but it is not thereby vested with judicial power in the constitutional sense." Id. (second emphasis added). The court added:
*586 While acting within the scope of its duty, or its jurisdiction, as it is sometimes called, such a board may lawfully be endowed with very broad powers, and its conclusions may be given great dignity and force, so that courts may not reverse them unless the proof be clear and satisfactory that they are wrong.
Id. at 359, 133 N.W. 209.
¶118 Borgnis is on point here. In response to the argument made over a century *65 ago, the Borgnis court suggested that only clear violations of law, i.e. unreasonable interpretations, are outside the jurisdiction of an agency. This is the same foundation underlying our deference framework. Although Borgnis addressed certiorari review, the same principle would apply to review of any administrative decision.
¶119 Further, contrary to the majority/lead opinion's assertion, agency deference does not remove from the court its interpretive role and cede it to the agency. In its application, deference does not mean accepting an agency's interpretation without a critical eye. Racine Harley-Davidson, Inc. v. State, Div. of Hearings and Appeals, 2006 WI 86, ¶ 15, 292 Wis.2d 549, 717 N.W.2d 184. Rather, "[t]he court itself must always interpret the statute to determine the reasonableness of the agency interpretation." Id. Only reasonable interpretations are worthy of deference. Id.
¶120 Not only does the majority/lead opinion throw tumult into a previously well-settled area of the law, but it does so based on a legal error. I would not upset the finality and consistency of our past decisions.
II
¶121 I write next to call attention to the unknown consequences of the court's decision. The court's result represents a tectonic shift in the administrative *587 law landscape. See Operton v. LIRC, 2017 WI 46, ¶ 71, 375 Wis.2d 1, 894 N.W.2d 426 (Ziegler, J., concurring) ("There is little doubt that ending the court's practice of according deference to agency interpretations of statutes would constitute a sea change in Wisconsin law[.]"). But on the topic of what this vast and sweeping change means for our prior cases, the majority/lead opinion provides precious little guidance.
¶122 Compounding its error, the majority/lead opinion unwinds our three-tiered system of deference by declaring it unconstitutional where, as Justices Ziegler and Gableman aptly observe, the use of the court's administrative powers would suffice. In doing so, the majority/lead opinion ignores our usual practice of constitutional avoidance. See State v. Hale, 2005 WI 7, ¶ 42, 277 Wis.2d 593, 691 N.W.2d 637 ("Normally this court will not address a constitutional issue if the case can be disposed of on other grounds."). Again, the majority/lead opinion is silent as to the ramifications of constitutionalizing the question. However, even making a decision on administrative grounds, we must consider the ramifications of such a decision.
¶123 The principle of stare decisis militates against the court's conclusion. Stare decisis is based in part on "the desirability that the law furnish a clear guide for conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise[.]" Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶ 95, 264 Wis.2d 60, 665 N.W.2d 257 (quoting Moragne v. States Marine Lines, Inc., 398 U.S. 375, 403, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) ). Parties appearing before agencies and those appealing agency decisions now enter uncharted waters. With no guide, they could *588 be subject to conflicting statutory interpretations that will make it nearly impossible to plan their affairs with any certainty.
¶124 This court, the court of appeals, and circuit courts throughout the state have applied great weight deference and due weight deference going back decades. What is the precedential value of these cases now? Are the principles they divine still good law even though they were reached through the application of a deference doctrine the court eschews today?
*66 ¶125 As an example, let's examine a case involving a question of statutory interpretation similar to that at issue here. In Zip Sort, Inc. v. Wis. DOR, 2001 WI App 185, ¶ 1, 247 Wis.2d 295, 634 N.W.2d 99, the court of appeals addressed an agency interpretation of the term "manufacturing property" as used in Wis. Stat. § 70.995.[2]
*589 ¶126 The question presented was whether Zip Sort's activities entitled it to a "manufacturing property" designation for tax purposes. Zip Sort's primary business was to make mail machine-sortable through the addition of a bar code. Id., ¶ 3.
¶127 The Department of Revenue determined that such activity did not entitle Zip Sort to a manufacturing classification for its property, and the Tax Appeals Commission agreed. Id., ¶ 10. In examining this determination, the court of appeals initially set about to determine the proper level of deference to accord to the Department's interpretation of the term "manufacturing property." Id., ¶¶ 11-22. The court declined to "determine whether the proper standard of review is due weight deference or great weight deference because [it] conclude[d] that the commission's conclusions under § 70.995 at least met the due weight deference standard." Id., ¶ 22.
¶128 Pursuant to such a standard, the court of appeals determined that the commission's interpretation was reasonable, and that Zip Sort's interpretation was "no more reasonable." Id., ¶ 34. Accordingly, it affirmed the commission's decision. Id. Whether the commission's interpretation was correct did not enter the analysis.
¶129 If it applied a de novo standard of review, would the Zip Sort court reach the same result? I do not know. However, the Zip Sort decision was reached *590 through the methodology that a majority of this court now disowns (and that several members suggest is contrary to the Wisconsin Constitution). Is what was a settled point of law since 2001 now unsettled? Can businesses and agencies rely on our past decisions in planning their future activities? The majority/lead opinion's assurances that they can provide little comfort and are thinly supported. See Justice Ziegler's concurrence, ¶ 139 n.3.
¶130 Zip Sort is not the only case where an appellate court has applied our three-tiered deference methodology. It serves as but one example of the myriad cases where courts have faithfully applied the deference jurisprudence as set forth by this court.
*67 ¶131 The court has significantly upset the finality of our past cases. "[F]requent and careless departure from prior case precedent undermines confidence in the reliability of court decisions." Johnson Controls, 264 Wis.2d 60, ¶ 95, 665 N.W.2d 257. "When legal standards 'are open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results.' " State v. City of Oak Creek, 2000 WI 9, ¶ 55 n.27, 232 Wis.2d 612, 605 N.W.2d 526 (citations omitted).
¶132 Our three-tiered deference scheme has suited us well over the past decades. In unnecessarily disowning our well-developed jurisprudence, the court should at least provide guidance for the future. Litigants, circuit courts and the court of appeals should not be left adrift to redefine what has previously been well-settled.
¶133 For the above stated reasons, I respectfully concur.
¶134 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this concurrence.