Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/20/2020 08:08 AM CST

- 947 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

ASH GROVE CEMENT COMPANY, APPELLEE, V.
NEBRASKA DEPARTMENT OF REVENUE
ET AL., APPELLANTS.

LYMAN-RICHEY CORPORATION, APPELLANT, V.
NEBRASKA DEPARTMENT OF REVENUE
ET AL., APPELLEES.

___ N.W.2d ___

Filed August 28, 2020.    Nos. S-19-669, S-19-674, S-19-675.

1. **Administrative Law: Judgments: Appeal and Error.** In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.

2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Administrative Law: Statutes: Appeal and Error.** The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

4. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

5. **Statutes.** A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

6. ____. Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, giving effect to every provision.

- 948 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

7. **Taxation: Presumptions.** An exemption from taxation is never presumed.
8. **Taxation: Proof.** The burden of showing entitlement to a tax exemption is on the applicant.
9. **Statutes: Taxation.** Statutory tax exemption provisions are to be strictly construed, and their operation will not be extended by judicial construction.
10. ____: ____. An exemption from taxation must be clearly authorized by the relevant statutory provision.
11. **Judgments: Appeal and Error.** An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.
12. **Administrative Law: Statutes.** Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.
13. **Statutes: Words and Phrases: Appeal and Error.** An appellate court attempts to give effect to each word or phrase in a statute and ordinarily will not read language out of a statute.
14. **Statutes: Legislature: Intent.** The intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute.

Appeals from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Douglas J. Peterson, Attorney General, and L. Jay Bartel, for Nebraska Department of Revenue et al.

Nicholas K. Niemann, Kristopher Covi, and Matthew R. Ottemann, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for Ash Grove Cement Company and Lyman-Richey Corporation.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

The Nebraska Department of Revenue; Tony Fulton, in his capacity as Tax Commissioner; and the State of Nebraska (collectively the Department) appeal the order of the district court for Lancaster County finding that the production of aggregate

- 949 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

by Ash Grove Cement Company (Ash Grove) qualifies as "processing" under the Nebraska Advantage Act (NAA), Neb. Rev. Stat. §§ 77-5701 to 77-5735 (Reissue 2009 & Cum. Supp. 2016).

Lyman-Richey Corporation (Lyman-Richey), a wholly owned subsidiary of Ash Grove, separately appeals, challenging the court's finding that its aggregate production does not qualify as "manufacturing" under the NAA and denying its claims for overpayment of sales and use tax.

The appeals are without merit. We affirm.

## BACKGROUND

In June 2012, Ash Grove and its subsidiaries applied to the Department for an agreement with the commissioner for a tier 2 project as defined under § 77-5725(1)(b). In December 2016, the commissioner and Ash Grove executed an agreement for the project, which included NAA tax incentives.

Ash Grove's project encompassed multiple locations, including administrative locations, cement manufacturing locations, maintenance locations, and concrete production locations. It is undisputed that one or more of the activities at these locations constitute qualified business under the NAA, making Ash Grove eligible for tax incentives. Under § 77-5715(1)(c), for a tier 2 project, "qualified business" means any business engaged in the "assembly, fabrication, manufacture, or processing of tangible personal property."

Because Lyman-Richey is wholly owned by Ash Grove, Ash Grove is eligible to include Lyman-Richey in its application for NAA tax incentives. The project included nine locations at which Lyman-Richey produces aggregate. Generally, aggregate consists of sand and gravel. Lyman-Richey sells aggregate products used for things like manufacturing concrete, manufacturing asphalt, masonry and mortar, road gravel, and golf course top dressing. A significant portion of Lyman-Richey's aggregate products are used by Lyman-Richey or a related entity at its concrete production locations.

- 950 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

To produce aggregate, Lyman-Richey uses excavation equipment at a designated site to expose the water table, forming a lake, and then extracts raw slurry from the lake. Raw slurry is a naturally occurring mixture consisting of sand and gravel particulates, mud, waste products, and debris. Lyman-Richey uses dredging equipment to initially break down, clean, and segregate sand and gravel. The dredging equipment includes a ladder with a "cutter head," which spins and loosens the raw slurry. Pumps transport the materials through inbound pipelines to a Lyman-Richey plant for further operations.

The particulates reach classifier tanks that sort the materials into different mixtures, producing various aggregate products according to the precise "recipe" or specification of customers. The plant equipment has rotary screens, which filter the particulates by size. The raw slurry hits the screens that catch gravel with dirt and clay in it and discharge mud, rocks, or waste. Larger materials are sent through a "log washer" to turn, scrub, and break up clay and dirt particles. The sand and gravel particulates pass through a dewatering operation, which mixes the sand and gravel back together and removes mud and clay particles. Pumps return waste products through outbound pipes to the lake. Conveyors stockpile the finished sand and gravel aggregate products, which are loaded into trucks and weighed on a scale. Customers are billed according to weight.

At times, Lyman-Richey uses crushing equipment on the sand and gravel. Lyman-Richey has three crushers, which are often transported and used to crush aggregate at customer locations.

In August 2016, the Department issued Ash Grove a notice of deficiency determination, stating that the aggregate production locations are not engaged in qualified business under the NAA. Ash Grove timely protested. While the dispute between Ash Grove and the Department over the scope of the NAA project was pending, Lyman-Richey filed claims for overpayment of sales and use tax for 2011 based on Nebraska's manufacturing machinery and equipment exemption under Neb. Rev. Stat. §§ 77-2701.47(1)(a) and (b) and 77-2704.22

- 951 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

(Reissue 2018). The commissioner consolidated the matters and conducted an administrative hearing lasting 3 days.

## Commissioner's Decision

The commissioner first considered whether the activities at the aggregate production locations constitute "manufacturing" under the NAA. Neb. Rev. Stat. § 77-2701.46 (Reissue 2018) defines "[m]anufacturing," in part, as "an action or series of actions performed upon tangible personal property . . . which results in that tangible personal property being *reduced or transformed into a different state, quality, form, property, or thing*." (Emphasis supplied.) Ash Grove and Lyman-Richey argued that because they take raw slurry from the ground, clean and sort the material, and extract desirable sizes of sand and gravel, they transform and reduce the raw slurry into a different state, quality, form, property, or thing. The commissioner disagreed and concluded that the aggregate production activities cannot be considered "manufacturing." The commissioner concluded that the aggregate products are not "reduced" or "transformed," but, rather, that they remain sand and gravel before and after extraction. The commissioner found that the aggregate production activities described mining, not manufacturing. Under 316 Neb. Admin. Code, ch. 1, § 107.03C (2017), manufacturing does not include "[m]ining, quarrying, and any other activity performed in severing raw materials or other property from the ground."

The commissioner conceded that Lyman-Richey's crushing activities do constitute "manufacturing." The commissioner also found that some, but not all, of the aggregate production locations qualified for NAA tax incentives on separate grounds, under § 77-5715(1)(e) and (4). Thus, the commissioner granted in part and denied in part Ash Grove's protest.

The commissioner denied Lyman-Richey's claims for overpayment, finding that because the aggregate production locations are not engaged in "manufacturing," Lyman-Richey failed to prove entitlement to the manufacturing machinery or equipment exemption. The court found that the claims for

- 952 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

overpayment were for 2011 and that Lyman-Richey failed to adduce evidence that crushing occurred in 2011.

### DISTRICT COURT ORDER

Ash Grove and Lyman-Richey separately sought judicial review of the commissioner's final decision pursuant to the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2014 & Cum. Supp. 2016). Upon consolidation of the matters, the issue before the court was whether the aggregate production locations were engaged in qualified business under the NAA even if they do not crush gravel. Following a hearing, the court issued an order reversing the commissioner's determination partially excluding the aggregate production locations from the NAA project on the basis that they are not engaged in qualified business and affirming the commissioner's denial of Lyman-Richey's claims for overpayment of sales and use tax.

The court agreed with the commissioner that the aggregate is the relevant property for consideration and that the cleaning, sorting, and blending of aggregate does not qualify as "manufacturing" under the NAA. The court noted that no Nebraska appellate court has decided whether the production of aggregate products is considered "manufacturing" and that the decisions of courts in other jurisdictions are mixed, but concluded the majority of courts have found that aggregate production does not constitute "manufacturing."[1] The court agreed with the commissioner that removing mud and water from the aggregate and blending particles together did

---

[1] See, *Tilcon-Warren Quarries v. Com'r of Revenue*, 392 Mass. 670, 467 N.E.2d 472 (1984); *Solite Corp. v. County of King George*, 220 Va. 661, 261 S.E.2d 535 (1980); *Rock of Ages Corporation v. Com'r of Taxes*, 134 Vt. 356, 360 A.2d 63 (1976); *Iowa Limestone Co. v. Cook*, 211 Iowa 534, 233 N.W. 682 (1930); *Inhabitants of Leeds v. Maine Crushed Rock & Gravel Co.*, 127 Me. 51, 141 A. 73 (1928). Compare, *Dolese Bros. v. State ex rel. Com'n*, 64 P.3d 1093 (Okla. 2003); *Stoneco, Inc. v. Limbach*, 53 Ohio St. 3d 170, 560 N.E.2d 578 (1990); *Kobyluck Bros. v. Planning & Zoning Com'n*, 167 Conn. App. 383, 142 A.3d 1236 (2016).

- 953 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

not "reduce" or "transform" the aggregate, and it stated that "[t]he aggregate remained what it was before Lyman-Richey extracted it from the earth, albeit cleaner and grouped with different particles."

However, the court found that the aggregate production locations are engaged in the qualified business of "processing" under § 77-5715(1)(c) of the NAA. In doing so, the court rejected the Department's argument that the terms "manufacturing" and "processing" have the same meaning according to an energy source exemption regulation, 316 Neb. Admin. Code, ch. 1, § 089.02A (2017). The court found that the regulation was not at issue. In interpreting the plain and ordinary meaning of the word "processing" as used in § 77-5715(1)(c), the court relied upon cases from other jurisdictions to conclude that "processing" does not require the reduction or transformation of tangible personal property.[2] The court defined "'[p]rocess'" as "'to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result . . . ,'"[3] and it found that the activity at the aggregate production locations met that definition of "processing." As a result, the court found that the commissioner erred by partially excluding the nine aggregate production locations from Ash Grove's NAA project. Because the court found that the aggregate production locations were engaged in the qualified business of "processing" tangible personal property, the court did not address other grounds raised by Ash Grove for qualification under the NAA.

The district court affirmed the commissioner's denial of Lyman-Richey's claims for overpayment based on the manufacturing machinery and equipment exemption, finding that

[2] *Com., Dept. of Taxation v. Orange-Madison Coop.*, 220 Va. 655, 261 S.E.2d 532 (1980); *Tetra Tech EC, Inc. v. WI Dept. of Revenue*, 373 Wis. 2d 287, 890 N.W.2d 598 (Wis. App. 2016).

[3] *Nucor Steel v. Leuenberger*, 233 Neb. 863, 873-74, 448 N.W.2d 909, 915 (1989), quoting Webster's Third New International Dictionary, Unabridged 1808 (1981).

- 954 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

Lyman-Richey failed to prove that its machinery or equipment is used in "manufacturing." The Department and Lyman-Richey filed separate appeals. We granted the Department's petition to bypass and consolidated the cases for argument and disposition.

## ASSIGNMENTS OF ERROR

Lyman-Richey assigns, restated, that the court erred in finding that the aggregate production locations are not engaged in "manufacturing" under the NAA and in denying its claims for overpayment of sales and use tax based on the manufacturing machinery or equipment exemption.

The Department assigns that the court erred in finding the aggregate production locations are engaged in "processing" under the NAA.

## STANDARD OF REVIEW

[1,2] In an appeal under the Adminstrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.[4] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[5]

[3] The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[6]

## ANALYSIS

[4-6] These appeals require us to interpret the meaning of the statutory terms "manufacturing" and "processing" as

---

[4] *Woodmen of the World v. Nebraska Dept. of Rev.*, 299 Neb. 43, 907 N.W.2d 1 (2018).

[5] *Id*.

[6] *Id*.

- 955 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

used in § 77-5715(1)(c) of the NAA. We determine a statute's meaning based on its text, context, and structure. In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[7] A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[8] Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, giving effect to every provision.[9]

[7-10] An exemption from taxation is never presumed.[10] The burden of showing entitlement to a tax exemption is on the applicant.[11] Statutory tax exemption provisions are to be strictly construed, and their operation will not be extended by judicial construction.[12] An exemption from taxation must be clearly authorized by the relevant statutory provision.[13]

With these principles in mind, we consider the relevant statutes to determine, first, whether the aggregate production locations are engaged in "manufacturing"; second, whether Lyman-Richey is entitled to overpayment of sales and use tax under Nebraska's manufacturing machinery and equipment exemption; and third, whether the aggregate production locations are engaged in the qualified business of "processing" under the NAA.

As our analysis will show, in Nebraska, the term "manufacturing" is specifically defined by statute, and applying the

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000).

[11] *Id.*

[12] *Woodmen of the World, supra* note 4.

[13] *Id.*

- 956 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

facts in this case to that definition leads us to the straightforward conclusion that the aggregate production locations are not engaged in "manufacturing" under the NAA. And, because the aggregate production locations are not engaged in "manufacturing," Lyman-Richey's claims for overpayment under the manufacturing machinery and equipment exemption are without merit.

However, our analysis in interpreting the word "processing" as used in the NAA is more complex. We acknowledge that the meanings of "manufacturing" and "processing" are closely related. But we determine in this case that the terms are not synonymous. This case turns on whether any relevant differences between the terms exist. Here, the terms differ because "manufacturing" requires that tangible personal property be reduced or transformed into a different state, quality, form, property, or thing, and "processing" does not. As we will discuss later in more detail, in the absence of a statute or regulation indicating the contrary, the most natural reading of "processing" is that which subjects property to a particular method or treatment in order to prepare such property for market. Under the circumstances and issues presented for resolution in this case, a clear distinction exists between the terms "manufacturing" and "processing" under the NAA. The aggregation production locations are not engaged in "manufacturing"; they are engaged in "processing."

## Aggregate Production Not Manufacturing

The NAA provides tax incentives to taxpayers that are engaged in qualified business and have fulfilled employment and investment obligations in Nebraska. The Legislature enacted the NAA, 2005 Neb. Laws., L.B. 312, §§ 23 to 56, in order to (1) encourage new businesses to relocate to Nebraska; (2) retain existing businesses and aid in their expansion; (3) promote the creation and retention of new, quality jobs in Nebraska, specifically jobs related to research

- 957 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

and development, manufacturing, and large data centers; and (4) attract and retain investment capital in the State of Nebraska.[14]

The NAA created six tiers of projects.[15] The incentives for tier 2 projects generally include refund of sales and use tax, as well as tax credits for reduction of income tax and employee withholding taxes.[16] To receive tier 2 benefits, a taxpayer must commit to investing at least $3 million and hiring at least 30 new employees.[17] An interested taxpayer must file an application requesting an agreement with the commissioner.[18]

Qualification for incentives under the NAA requires the taxpayer to be engaged in a "qualified business,"[19] which includes, among other things, "[t]he assembly, fabrication, manufacture, or processing of tangible personal property."[20] Any term used in the NAA shall have the same meaning as used in chapter 77, article 27, of Nebraska's statutes.[21] A statute in chapter 77, article 27, defines "'[m]anufacturing'" as "an action or series of actions performed upon tangible personal property, either by hand or machine, which results in that tangible personal property being reduced or transformed into a different state, quality, form, property, or thing."[22] "Tangible personal property means personal property which may be seen, weighed, measured, felt, or touched or which is in any other manner perceptible to the senses."[23]

---

[14] § 77-5702.

[15] See § 77-5725.

[16] See, *id*.; § 77-5726.

[17] § 77-5725(1)(b).

[18] § 77-5723.

[19] See *id*.

[20] See § 77-5715.

[21] § 77-5704.

[22] § 77-2701.46.

[23] Neb. Rev. Stat. § 77-2701.39 (Reissue 2018).

- 958 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

Initially, the parties disagree as to what tangible personal property is alleged to be manufactured. Lyman-Richey contends that it is engaged in manufacturing because it reduces or transforms raw slurry into aggregate. The Department, however, contends that the aggregate is merely part of the raw slurry extracted from the lake. The commissioner stated that raw slurry is essentially ground that has been soaked in a lake and described the raw slurry as part of the real estate of the extraction site.[24] The district court concluded that raw slurry is not the relevant personal property, but that the aggregate is the relevant personal property. As a result, the district court focused on whether the aggregate was subjected to the activities listed in the statutory definition of "manufacturing."

We agree with the district court's conclusion that the relevant tangible personal property is the aggregate. Therefore, to show that it is engaged in "manufacturing," Lyman-Richey must show that it reduces or transforms the aggregate into a different state, quality, form, property, or thing.

Because Nebraska appellate courts have not previously decided whether aggregate production is considered "manufacturing" under § 77-2701.46 for purposes of the NAA, the parties cite to definitions of "manufacturing" from other states' case law.[25] In Lyman-Richey's lead case, *Dolese Bros. v. State ex rel. Tax Com'r*, the Supreme Court of Oklahoma considered whether a plant's method of producing sand constituted manufacturing for purposes of Oklahoma's manufacturing equipment and property exemption. Similar to Lyman-Richey's aggregate production operations, the plants in Oklahoma extracted sand from water passed through plant equipment for screening, classifying, blending, and dewatering.[26] The court found that the sand plants were engaged in manufacturing, because

---

[24] See *Wheelock & Manning OO Ranches, Inc. v. Heath*, 201 Neb. 835, 272 N.W.2d 768 (1978).

[25] See, *Dolese Bros., supra* note 1; *Solite Corp., supra* note 1.

[26] See *Dolese Bros., supra* note 1.

- 959 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

although natural sand and blended sand were composed of the same materials, the blended sand was "'new and different from the form of the material used in making it.'"[27] However, Nebraska's statute is different from Oklahoma's "68 O.S. Supp. 1993, § 1352(I)," which defined "manufacturing" to mean "'every operation commencing with the first production stage of any article of tangible personal property and ending with the completion of tangible personal property having the physical properties which it has when transferred by the manufacturer to another.'"[28]

The Department directs us to the Supreme Court of Virginia's decision in *Solite Corp. v. County of King George*.[29] The court in that case found that extracting, crushing, washing, screening, grading, and blending of sand and gravel did not constitute manufacturing. The court defined the term "manufacturing" as "transform[ing] the new material into an article or a product of substantially different character."[30] The court quoted a definition of manufacturing used by the U.S. Supreme Court in *Anheuser-Busch Assn. v. United States*,[31] which states that manufacturing requires "'transformation; a new and different article must emerge, "having a distinctive name, character or use."'" In *Anheuser-Busch Assn.*, the Court determined that producing a cork for use in bottling beer did not constitute manufacturing because "[a] cork put through the claimant's process is still a cork."[32] In *Solite Corp.*, the court found that although washing, screening, and grading removed impurities and segregated grades of sand and gravel, the

---

[27] *Id*. at 1104 (emphasis omitted).

[28] *Id*. at 1101.

[29] *Solite Corp., supra* note 1.

[30] *Id*., 220 Va. at 663, 261 S.E.2d at 536.

[31] *Id*., citing *Anheuser-Busch Assn. v. United States*, 207 U.S. 556, 28 S. Ct. 204, 52 L. Ed. 336 (1908).

[32] *Anheuser-Busch Assn., supra* note 31, 207 U.S. at 562.

- 960 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

operations did not transform the sand and gravel into a product of substantially different character.[33]

However, Virginia's definition of manufacturing requiring "a product of substantially different character" imposed a higher standard than Nebraska's definition. For example, the court in *Solite Corp.* found that crushing rock did not constitute manufacturing,[34] but here, the commissioner has conceded that crushing activities constitute manufacturing.

Statutory language is to be given its plain and ordinary meaning, and we will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[35] To "reduce" is "to diminish in size, amount, extent, or number."[36] To "transform" is "to change the outward former appearance" or "to change in character or condition."[37]

Lyman-Richey's sole argument that it "reduces" or "transforms" the aggregate, and thus meets the definition of "manufacturing" under § 77-2701.46, is that its aggregate production physically changes the aggregate. However, the record indicates that Lyman-Richey failed to meet its burden to prove that the aggregate production reduces or transforms the aggregate.

Ash Grove conducted tests of the aggregate to determine whether there were any "mineralogical and physical differences due to Lyman[-]Richey plant operational practices, including, but not limited to washing, sieving, blending and particle attrition processes." Ash Grove's technical center tested samples of raw slurry, aggregate product, and road gravel. The director of the technical center testified that he did not identify any differences in the samples. He testified, "[W]e tr[ied] to

---

[33] *Solite Corp., supra* note 1. See, also, *Rock of Ages Corporation, supra* note 1.

[34] See *Solite Corp., supra* note 1.

[35] *Tran v. State*, 303 Neb. 1, 926 N.W.2d 641 (2019).

[36] Webster's Third New International Dictionary 1905 (1993).

[37] *Id.* at 2427.

- 961 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

use our in-house equipment to define what's the difference between slurry and then the gravel samples. We cannot. So we said it's inconclusive."

Ash Grove engaged an engineering professor to conduct the test with equipment used in a laboratory at the University of Nebraska-Lincoln. The professor gave varied testimony as to whether the testing showed the angularity, texture, or sphericity of the raw slurry particles differed from that of the aggregate. The professor testified that the raw slurry was more angular than the finished product. This was contrary to the report submitted to the hearing officer. When questioned about the discrepancy, the professor testified that the report was incorrect. Upon further questioning, the professor stated that the raw slurry was less angular, but still seemed unclear about whether the report was correct.

The record supports the district court's determination that Ash Grove's tests lacked credibility and that Lyman-Richey failed to meet its burden of proving a reduction or transformation of aggregate particles due to its "inconsistent and contradictory" evidence. The court found that any scuffing of the aggregate particles due to the cleaning, sorting, and blending of aggregate was incidental and not the result of a plan or design. The court stated, "Removing mud and water from the aggregate and blending the particles together did not diminish them; markedly change their appearance or form; or convert them into something new. The aggregate remained what it was before Lyman-Richey extracted it from the earth, albeit cleaner and grouped with different particles." The court concluded that the aggregate production did not constitute "manufacturing" under the NAA.

[11] Our standard of review in an appeal from a district court's de novo on the record decision under the Administrative Procedure Act is deferential. An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district

- 962 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

court where competent evidence supports those findings.[38] Our review shows that there was competent evidence in the record for the district court's decision. It was neither arbitrary, capricious, nor unreasonable.

Because we conclude Ash Grove and Lyman-Richey failed to sustain their burden to prove that they "reduced" or "transformed" the aggregate under Nebraska's statutory definition of "manufacturing" provided in § 77-2701.46, we need not rely on definitions of "manufacturing" from other jurisdictions. The district court correctly affirmed the commissioner's conclusion that, independent of crushing aggregate, the aggregate production locations are not engaged in "manufacturing" tangible personal property under the NAA.

## Lyman-Richey Not Entitled to Exemption

Lyman-Richey contends that the machinery and equipment at the aggregate production locations is exempt from sales and use tax. The Nebraska Revenue Act of 1967[39] imposes a sales tax on the gross receipts of retail sales of tangible personal property sold in this state[40] and a use tax when tangible personal property purchased outside of Nebraska is stored, used, or consumed in Nebraska.[41] The general theory behind the sales and use taxes is to impose a tax on each item of property, unless specifically excluded, at some point in the chain of commerce.[42] If the item is purchased in Nebraska, the sales tax applies. If the item is purchased outside of Nebraska, the use tax applies.[43]

---

[38] *Abay, L.L.C. v. Nebraska Liquor Control Comm.*, 303 Neb. 214, 927 N.W.2d 780 (2019); *Tran, supra* note 35.

[39] See Neb. Rev. Stat. §§ 77-2701 to 77-27,135.01, 77-27,222, 77-27,235, 77-27,236, 77-27,238, and 77-27,239 (Reissue 2018 & Supp. 2019).

[40] See § 77-2703(1).

[41] § 77-2703(2).

[42] *Lackawanna Leather Co., supra* note 10.

[43] *Id.*

- 963 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

The Legislature has exempted certain sales and uses from taxation.[44] Section 77-2704.22 provides:

> (1) Sales and use taxes shall not be imposed on the gross receipts from the sale, lease, or rental and on the storage, use, or other consumption in this state of manufacturing machinery and equipment.
>
> (2) Sales and use taxes shall not be imposed on the gross receipts from the sale of installation, repair, and maintenance services performed on or with respect to manufacturing machinery and equipment.

[12] "Manufacturing machinery and equipment means any machinery or equipment purchased, leased, or rented by a person engaged in the business of manufacturing for use in manufacturing . . . ."[45] The Department has promulgated 316 Neb. Admin. Code, ch. 1, § 107.03 (2017), for the manufacturing machinery and equipment exemption, which states in part that "[m]anufacturing requires a physical change to the tangible personal property and does not include an increase in the value of a product without a physical change." Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.[46]

Lyman-Richey argued before the district court that the regulation is invalid because it alters the statutory definition of "manufacturing" found in § 77-2701.46.[47] On appeal, Lyman-Richey does not challenge the regulation, but argues that it meets the regulation's physical change requirement. Lyman-Richey argues that the machinery and equipment at the aggregate production locations are manufacturing machinery and equipment under § 77-2701.47(1)(a) and (b).

---

[44] See, generally, §§ 77-2704.02 to 77-2704.30.

[45] § 77-2701.47(1).

[46] *Tran, supra* note 35.

[47] See *Switch & Co. v. Nebraska Dept. of Rev.*, 278 Neb. 763, 773 N.W.2d 381 (2009) (administrative agency cannot use its rulemaking power to modify, alter, or enlarge provisions of statute that it is charged with administering).

- 964 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

Lyman-Richey contends that it is "engaged in the business of manufacturing" under § 77-2701.47(1), because the machinery and equipment at the aggregate production locations are used in connection with the concrete production locations, which are engaged in manufacturing. However, as observed by the commissioner and the district court, § 77-2701.47(1)(a) includes "[m]achinery or equipment *for use in manufacturing* to produce, fabricate, assemble, process, finish, or package tangible personal property." (Emphasis supplied.) Lyman-Richey does not qualify for the exemption under § 77-2701.47(1)(a), because the aggregate production machinery or equipment must be used in manufacturing as defined in § 77-2701.46.

As explained above, there is competent evidence in the record to support the district court's conclusion that Lyman-Richey failed to prove a reduction or transformation of tangible personal property and therefore is not engaged in manufacturing as defined in § 77-2701.46. It follows that Lyman-Richey failed to prove that its aggregate production machinery or equipment is used in manufacturing as defined in Neb. Admin. Code, ch. 1, § 107.03, which, in addition to requiring reduction or transformation of tangible personal property, requires physical change to tangible personal property. There is competent evidence in the record to support the finding that Lyman-Richey failed to prove physical change to the aggregate and thus cannot claim entitlement under the exemption.

Section 77-2701.47(1)(b) includes "[m]achinery or equipment for use in transporting, conveying, handling, or storing by the manufacturer the raw materials or components to be used in manufacturing or the products produced by the manufacturer." Lyman-Richey contends that all of the equipment at the aggregate production locations is used to transport, convey, handle, or store the aggregate products used at the concrete production locations. Both the commissioner and the district court found that Lyman-Richey's broad claim, encompassing all of the aggregate production equipment,

- 965 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

lacks evidentiary support. As the district court articulated, the fact that Lyman-Richey sends a significant portion of its aggregate to the concrete production locations alone is insufficient proof that all the aggregate equipment is used to transport, convey, handle, or store the raw material. For example, Lyman-Richey did not explain why its excavation, dredging, or waste handling equipment would qualify. Under the Department's regulations, the term "manufacturing" does not include "[m]ining, quarrying, and any other activity performed in severing raw materials or other property from the ground"[48] or "[s]orting, cleaning, or repackaging of property, or breaking bulk quantities of property into smaller units or packages."[49] In addition, Lyman-Richey is not a manufacturer within the meaning of "[m]achinery or equipment for use in transporting, conveying, handling, or storing by the manufacturer . . ." under § 77-2701.47(1)(b). The aggregate production equipment merely produces one of the three ingredients, along with water and cement, used at other locations that manufacture concrete. The aggregate's later use in manufacturing concrete does not establish that the aggregate production locations are engaged in manufacturing.[50] This assignment of error is without merit.

## AGGREGATE PRODUCTION
## IS PROCESSING

The final issue to consider is whether the aggregate production locations are engaged in "processing" under the NAA. Section 77-5715(1)(c) provides that "qualified business" includes "[t]he assembly, fabrication, manufacture, or processing of tangible personal property." The NAA does not define the term "processing" or its relationship with the term

[48] 316 Neb. Admin. Code, ch. 1, § 107.03C.

[49] 316 Neb. Admin. Code, ch. 1, § 107.03J (2017).

[50] See *NBZ Enterprises v. City of Shakopee*, 489 N.W.2d 531 (Minn. App. 1992).

- 966 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

"manufacture." Although § 77-5733 of the NAA authorizes the commissioner to adopt rules and regulations necessary to carry out the NAA, the commissioner has not adopted any regulations with respect to "processing" as used in the NAA.

In *Nucor Steel v. Leuenberger*,[51] this court determined that a manufacturer was not entitled to a sales and use tax exemption, because it failed to prove that refractories used in steel production were an essential ingredient of a manufactured product. We found that even if the refractories were an essential ingredient, the refractories were not used in a product which had been manufactured, processed, or fabricated for ultimate sale at retail. We stated that "'[m]anufacture,'" in the ordinary sense, means "'to make (as raw material) into a product suitable for use . . . to make from raw materials by hand or by machinery . . . to produce according to an organized plan and with division of labor . . . .'"[52] We defined "'[p]rocess'" to mean "'to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result . . . .'"[53]

Here, the district court employed the § 77-2701.46 definition of the term "manufacturing," as "an action or series of actions performed upon tangible personal property . . . which results in that tangible personal property being reduced or transformed into a different state, quality, form, property, or thing." The district court also recited the *Nucor Steel* definition of the term "processing" in its order, as well as quoting a contemporary dictionary definition which states that "'process'" means a "'series of actions, changes, or functions bringing about a result' or a 'series of operations performed in the making or treatment of a product.'"[54]

---

[51] *Nucor Steel, supra* note 3.

[52] *Id*. at 873, 448 N.W.2d at 915, quoting Webster's Third New International Dictionary, Unabridged (1981).

[53] *Id*. at 873-74, 448 N.W.2d at 915, quoting Webster's, *supra* note 52.

[54] See *Nucor Steel, supra* note 3.

- 967 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

The district court cited to cases from other jurisdictions that indicate "processing" does not require the reduction or transformation of personal property.[55] In *Com., Dept. of Taxation v. Orange-Madison Coop.*,[56] the Virginia Supreme Court held that machinery, fuel, and equipment used by a farm cooperative in its feed plants were exempt from sales and use tax, because the mixing together of grains and additives in the production of feed qualified as processing within the meaning of the exemption at issue. In doing so, the court utilized the following definition of "processing" from "Webster's Third International Dictionary (1966)":

"to subject to a particular method, system, or technique of preparation, handling or other treatment designed to effect a particular result: put through a special process: as . . . (1): to prepare for market, manufacture, or other commercial use by subjecting to some process (processing cattle by slaughtering them) (processed the milk by pasteurizing it) (processing grain by milling) (processing cotton by spinning) (2): to make usable by special treatment (processing rancid butter) (processing waste material) (processed the water to remove impurities)."[57]

The Virginia court stated that based on this definition of "processing," unlike "manufacturing," "processing" does not require transformation of raw material into an article of substantially different character, but instead requires that the product undergo treatment rendering the product more marketable or useful.[58] The court found the mixing together of grain and additives in the production of feed resulted in a more marketable and useful product.

---

[55] *Orange-Madison Coop., supra* note 2; *Tetra Tech EC, Inc., supra* note 2.

[56] *Orange-Madison Coop., supra* note 2.

[57] *Id.* at 658, 261 S.E.2d at 534.

[58] See *id.*

- 968 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

Other courts have pointed out that the essential part of Webster's definition of processing is, in substance, to prepare raw material for market.[59]

Relying on the definition of "processing" from *Nucor Steel*, and having considered other definitions of "processing," the district court here concluded that the plain and ordinary meaning of the term "processing" as it appears in § 77-5715(1)(c) does not require reduction or transformation of tangible personal property.[60] The court found that the washing and mixing of the aggregate subjected the aggregate to a particular method of preparation or treatment, the purpose and result of which was to produce desirable aggregate according to the specification of customer demands. While there is no market for raw slurry, Lyman-Richey cleaned and blended the aggregate to make it marketable. Therefore, the court found that the aggregate production locations are engaged in "processing."

The Department argues the court erred in finding that "processing" as used in § 77-5715(1)(c) does not require the reduction or transformation of tangible personal property into a different state, quality, form, property, or thing. The Department contends, pursuant to *Metropolitan Utilities Dist. v. Balka*,[61] that "manufacturing" and "processing" both require the transformation or conversion of materials into a different state or form.

In *Balka*, this court held that a utility district's use of electricity to transport treated water into storage did not constitute "manufacturing" or "processing" under Neb. Rev. Stat. § 77-2704.13 (Cum. Supp. 1992), which provided a sales and

---

[59] See *Fischer Artificial Ice & C. Stor. Co. v. Iowa Tax Com'n*, 248 Iowa 497, 81 N.W.2d 437 (1957) (citing cases). See, also, *Palace Laundry, Inc. v. Chesterfield County*, 276 Va. 494, 666 S.E.2d 371 (2008) (processing requires product to undergo treatment rendering it more marketable or useful).

[60] *Nucor Steel, supra* note 3.

[61] *Metropolitan Utilities Dist. v. Balka*, 252 Neb. 172, 560 N.W.2d 795 (1997).

- 969 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

use tax exemption for sales and purchases of electricity and other fuel sources "when more than fifty percent of the amount purchased is for use directly in processing, manufacturing, or refining tangible personal property, in the generation of electricity." Citing an energy source utility exemption under 316 Neb. Admin. Code, ch. 1, § 089.02A(1) (1994), the commissioner in *Balka* determined that the electricity used by the utility district to transport already treated water into storage was not used for manufacturing or processing. The district court agreed, and we affirmed on appeal.

In our analysis in *Balka*, we quoted a portion of § 089.02A(1), stating: "'[Manufacturing or processing is] an action or series of actions performed upon tangible personal property, either by hand or machine, which results in that tangible personal property being reduced or transformed into a different state, quality, form, property, or thing.'"[62] We stated that "[a]lthough construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction, particularly when the Legislature has failed to take any action to change such an interpretation."[63] We found that § 089.02A(1) is congruous with the generally accepted definitions of manufacturing and processing and that such definitions are in conformance with § 77-2704.13. We cited a treatise stating that "'[t]he terms "manufacturing" and "processing" imply essentially a transformation or conversion of material or things into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products.'"[64]

The Department argues that based on this court's acceptance of § 089.02A(1) and the quote from a treatise in *Balka*, we should understand § 77-2704.13 (Reissue 2018) to define

---

[62] *Id*. at 176, 560 N.W.2d at 799.

[63] *Id*.

[64] *Id*., quoting 68 Am. Jur. 2d *Sales and Use Tax* § 146 (1993).

- 970 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

processing as requiring transformation of material into a different state or thing. The Department contends that pursuant to § 77-5704, this court should apply this reading of processing under § 77-2704.13 to the NAA. We are not persuaded by this argument.

Neither this court in *Balka* nor the Department in its brief here considered the entire text of the Department's energy source utility exemption regulation. The full text provides:

> Processing or manufacturing is defined as an action or series of actions performed upon tangible personal property, either by hand or machine, which results in that tangible personal property being reduced or transformed into a different state, quality, form, property, or thing. *Processing includes grain drying and feed grinding* in a commercial facility, and the freezing of food products. Processing or manufacturing does not include repairing property, building erection, cold storage of food products, or the preparation of food for immediate consumption.[65]

Although the Legislature may not have responded to the Department's regulation at the time of *Balka*, § 77-2704.13(2), as amended by 2016 Neb. Laws., L.B. 774, § 4, provides:

> Sales and purchases of such energy sources or fuels when more than fifty percent of the amount purchased is for use directly in processing, manufacturing, or refining, in the generation of electricity, in the compression of natural gas for retail sale as a vehicle fuel, or by any hospital. For purposes of this subdivision, *processing includes the drying and aerating of grain* in commercial agricultural facilities[.]

(Emphasis supplied.)

Even though we agree with the district court's general conclusion that the energy source utility exemption does not directly shed light on the meaning of words used in the NAA,

---

[65] 316 Neb. Admin. Code, ch. 1, § 089.02A (2017) (emphasis supplied).

- 971 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

we find that § 77-2704.13(2) undermines the Department's argument, as the text of the statute does not resemble the rule advocated by the Department based on its regulation. The Legislature chose not to define "manufacturing" in this statute, and it did not define "processing" other than stating that processing includes the drying and aerating of grain in commercial agricultural facilities. Based on § 77-2704.13(2), we accept that for purposes of the NAA, processing includes drying and aerating grain, and reject the Department's argument that based on its regulation and our quote from a treatise in *Balka* that under the NAA, "processing" requires transformation of material into a different state or thing. Neither the Department[66] nor this court[67] has the authority to add language to a statute that is not there. When questioned at oral argument about its position that "manufacturing" and "processing" contain the same meaning, the Department failed to explain how drying or aerating grain would result in a reduction or transformation of property. Taxpayers dry and aerate grain to prepare the grain for market, but such does not transform the grain into a different state or thing.[68]

The Department also argues that the district court interpreted "processing" too broadly and that as a result, the meaning of assembly, fabrication, and manufacturing under § 77-5715(1)(c) become subsumed within processing. The Department has a legitimate concern about the breadth of the meaning of "processing" under the NAA. If the meaning of the term "processing" truly is understood to include everything that subjects property "'to a particular method . . . or other

---

[66] See, *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016); *Kerford Limestone Co. v. Nebraska Dept. of Rev.*, 287 Neb. 653, 844 N.W.2d 276 (2014).

[67] See *Nebraska Life & Health Ins. Guar. Assn. v. Dobias*, 247 Neb. 900, 531 N.W.2d 217 (1995).

[68] See *Matter of Collingwood Grain, Inc.*, 257 Kan. 237, 891 P.2d 422 (1995).

- 972 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

treatment designed to effect a particular result . . . ,'"[69] then the term risks swallowing the meaning of other terms listed under § 77-5715(1)(c). A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[70] Therefore, we must interpret "processing" so that its meaning does not interfere with the meaning of the other activities listed under § 77-5715(1)(c).

The dictionary definitions aid in our interpretation, because they help to provide the plain and ordinary meaning of "processing." We often turn to dictionaries to ascertain a word's plain and ordinary meaning.[71] In addition, when interpreting a statute, the statutory language must be understood in context.[72] Here, the context shows that "manufacturing" and "processing" have related but distinct meanings.

The U.S. Supreme Court was confronted with the difference between manufacturing and processing in *East Texas Lines v. Frozen Food Exp.*[73] In that case, the Court considered the processing of chickens and found that a chicken that has been killed and dressed by removing the feathers and entrails is still a chicken, but one that is now ready for market. The Court held that it could not conclude that this processing which merely makes the chicken marketable turns it into a manufactured commodity.

The Court noted that "'[m]anufactur[ing] implies a change, but every change is not manufactur[ing], and yet every

---

[69] *Nucor Steel, supra* note 3, 233 Neb. at 873-74, 448 N.W.2d at 915, quoting Webster's Third New International Dictionary, Unabridged 1808, *supra* note 3.

[70] *Woodmen of the World, supra* note 4; *Concrete Indus. v. Nebraska Dept. of Rev.*, 277 Neb. 897, 766 N.W.2d 103 (2009).

[71] *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016).

[72] See *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019).

[73] *East Texas Lines v. Frozen Food Exp.*, 351 U.S. 49, 76 S. Ct. 574, 100 L. Ed. 917 (1956).

- 973 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

change in an article is the result of treatment, labor and manipulation. . . . There must be transformation; a new and different article must emerge, "having a distinctive name, character, or use.""'[74] The Court further noted that "[a]t some point processing and manufacturing will merge. But where the commodity retains a continuing substantial identity through the processing stage we cannot say that it has been 'manufactured' . . . ."[75]

The Minnesota Court of Appeals considered the difference of manufacturing and processing in the context of gravel and sand.[76] The appellate court held that gravel processing includes only the crushing, sorting, and washing of gravel and not its later use in manufacturing ready-mix concrete. "The processing of the on-site gravel is distinct from the manufacturing of the gravel and sand with off-site materials into concrete. The crushing, sorting, and washing of the virgin gravel is a method of preparation producing a particular result. . . . The result is gravel suitable for manufacturing into ready-mix concrete."[77]

These decisions provide context from tax law governing manufacturing and processing businesses, which we consider in interpreting the Legislature's decision to include both activities under the NAA.

Finally, the structure of § 77-5715(1)(c) indicates that the types of activities listed must retain an independent meaning that is distinct from the other activities. The list of qualified businesses under § 77-5715(1)(c) are connected with the word "or." The word "or," when used properly, is disjunctive.[78] Statutory context can overcome the ordinary, disjunctive

---

[74] *Id.*, 351 U.S. at 53.

[75] *Id.*, 351 U.S. at 54.

[76] *NBZ Enterprises, supra* note 50.

[77] *Id.* at 535 (citations omitted).

[78] *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019).

- 974 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

meaning of "or."[79] Here, context favors the ordinary disjunctive meaning of "or," indicating that the NAA covers taxpayers engaged in any of the qualified business activities under § 77-5715(1)(c).[80]

[13] The Department's interpretation that "manufacturing" and "processing" have the identical meaning is contrary to the rules of statutory construction. The Department would have "manufacturing" swallow "processing," leaving "processing" meaningless. An appellate court attempts to give effect to each word or phrase in a statute and ordinarily will not read language out of a statute.[81] It is generally held that the statutes exempting property from taxation should be strictly construed in favor of taxation, but should not be interpreted unreasonably.[82] "'[P]rocessing' has to mean something."[83]

[14] The intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute.[84] If the Legislature had intended for manufacturing and processing to have the same meaning, it could have included processing in the definition of manufacturing under § 77-2701.46 or separately defined processing to

---

[79] *Encino Motorcars, LLC v. Navarro*, ___ U.S. ___, 138 S. Ct. 1134, 200 L. Ed. 2d 433 (2018).

[80] See, *Tetra Tech EC, Inc., supra* note 2 (use of different words joined by disjunctive connector "or" normally broadens coverage of statute to reach distinct, although potentially overlapping sets); *Kobyluck Bros., supra* note 1, 167 Conn. App. at 393, 142 A.3d at 1242 ("[w]e agree with the court that [the word 'or'] suggests that the drafters of the regulations intended to attach different meanings to the terms 'manufacture' and 'processing'").

[81] *Doty v. West Gate Bank*, 292 Neb. 787, 874 N.W.2d 839 (2016); *Werner v. Cty. of Platte*, 284 Neb. 899, 824 N.W.2d 38 (2012).

[82] See, *Ho-Chunk Nation v. WI Dept. of Revenue*, 317 Wis. 2d 553, 766 N.W.2d 738 (2009); *Sharp v. Tyler Pipe Industries, Inc.*, 919 S.W.2d 157 (Tex. App. 1996).

[83] *Tetra Tech EC, Inc., supra* note 2, 373 Wis. 2d at 301, 890 N.W.2d at 605.

[84] *Kerford Limestone Co., supra* note 66.

- 975 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

require reduction or transformation of property into a different thing or state. There is no applicable regulation setting forth the meaning of processing in the context of the NAA, and the only notable statutory definition of processing does not indicate that reduction or transformation of property into a different thing or state is required.

We hold that in the context of the NAA, "manufacturing" and "processing" have distinct meanings. "Manufacturing" means "an action or series of actions performed upon tangible personal property, either by hand or machine, which results in that tangible personal property being reduced or transformed into a different state, quality, form, property, or thing."[85] According to the definition of processing previously endorsed by this court in *Nucor Steel*, as modified by precedent from the U.S. Supreme Court,[86] the term "processing" means to subject to a particular method, system, or technique of preparation, handling or other treatment designed to prepare tangible personal property for market, manufacture, or other commercial use which does not result in the transformation of property into a substantially different character.

In this matter, the record indicates that the aggregate was subjected to a particular method for cleaning, sorting, and blending, but the aggregate was not transformed into a substantially different character. As a result, we conclude that the district court correctly found that in producing aggregate, without crushing, Ash Grove and Lyman-Richey are engaged in the qualified business of processing under the NAA. There is competent evidence in the record to support the district court's conclusion that the cleaning, sorting, and blending of aggregate according to customer specifications subjected the aggregate to a particular treatment which prepared the aggregate for market.

---

[85] § 77-2701.46.

[86] See, *East Texas Lines, supra* note 73; *Anheuser-Busch Assn., supra* note 31; *Nucor Steel, supra* note 3.

- 976 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ASH GROVE CEMENT CO. v. NEBRASKA DEPT. OF REV.
Cite as 306 Neb. 947

## CONCLUSION

Although Ash Grove does not engage in "manufacturing" when it produces aggregate without crushing, it does engage in the qualified business of "processing" under the NAA. The district court did not err in reversing the commissioner's partial exclusion of the aggregation production locations from the NAA project. Lyman-Richey failed to prove entitlement to overpayment of sales and use tax based on the manufacturing machinery and equipment exemption.

Affirmed.